NO. 4-00-0100

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JOSEPH GANCI, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Sangamon County

ODIE WASHINGTON, Director, Illinois ) No. 98MR26

Department of Corrections, JAMES ) 

WILLIAMS, JOANNE S. SHEA, ANNE TAYLOR, )

WILLIAM HARRIS, BARBARA HUBBARD,   )

HERBERT BROWN, CLYDE BROOKS, JAMES )

DONAHUE, MILTON MAXWELL, JORGE MONTES, )

WILLIAM WALSH, DONALD YOST, and THE ) Honorable

ILLINOIS PRISONER REVIEW BOARD, ) Thomas R. Appleton,

Defendants-Appellees. ) Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court
(footnote: 1):

Plaintiff Joseph Ganci is a prisoner at the Logan Correctional Center in the Illinois Department of Corrections (DOC).  Based on  events of June 8, 1974, he was convicted in April 1976 and is serving concurrent sentences of 33 to 100 years for murder and 11 to 33 years for attempt (murder).   On June 20, 1996, Ganci filed a complaint in Cook County circuit court against defendants, Odie Washington, then Director of DOC, the Illinois Prisoner Review Board (Board), and its individual members alleging that the Board had unconstitutionally increased his sentence in violation of the 
ex
 
post
 
facto
 clauses contained in the United States Constitution (U.S. Const., art. I, §10, cl. 1) and the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §16).  The case was transferred to the circuit court of Sangamon County in January 1998.  The original complaint was dismissed on defendants' motion, and Ganci filed an amended complaint.  Defendan­ts filed a motion directed to this complaint, ostensibly requesting summary judgment, which the trial court granted.  Ganci appeals, and we now vacate and remand.

I. BACKGROUND

A. Original Complaint

Ganci's original complaint was styled as a complaint for declaratory judgment and alleged that (1) under the law in effect at the time of Ganci's offense, he would have been considered for parole by the Parole and Pardon Board (now Board) beginning in 1983 or 1984; (2) in 1978, parole was abolished and all persons serving sentences under the old laws were given the option of receiving recalculated determinate sentences, with the exception of prisoners serving sentences longer than 20 years, including Ganci; (3) those prisoners continued to be eligible for parole; (4) the Board denied Ganci's parole every year from 1993 to and including 1998; (5) the Board unconstitutionally increased the length of Ganci's sentence by denying him parole, using criteria not in effect when Ganci committed the crime for which he was serving sentence; (6) those criteria were unconstitutionally imposed, not by the legislature, but by the executive branch of government; (7) were the Board to consider Ganci's case under the criteria in effect on June 8, 1974, it would have found him eligible for parole and ordered him released; and (8) Ganci's continued confinement is therefore unconstitutional.  

The complaint also alleged that (1) Ganci was convicted of aggravated battery while incarcerated at Pontiac Correctional Center and was sentenced to four years in prison; (2) Ganci's disciplinary record contains 12 violations in his first 10 years in prison; (3) in 1989, he was "written up" for two assaults on guards but was acquitted of one of those charges in a criminal trial; (4) Ganci received a disciplinary violation in 1992 but has had no discipline problems since; (5) every year, at least three witnesses have appeared at Ganci's parole hearing to urge his release; (6) no witness has ever appeared to testify against his release; (7) two letters, one from the Cook County State's Attorney and the other from the Livingston County State's Attorney, were received, stating that Ganci remained a danger to the community; (8) he has maintained close ties with his family; (9) the record is "replete with specific, uncontradicted evidence" demonstrating that Ganci poses no threat should he be paroled; (10) four offers of employment, if Ganci should be paroled, have been renewed each year that he has appeared before the Board; and (11) certain people in Chicago, where Ganci would live, have written letters to the Board supporting his parole.

The complaint also alleged that every year in which parole was denied, the Board cited only one statutory criterion as the basis for denying parole, 
i.e.
, that parole would deprecate the "very serious nature" of Ganci's offense and promote disrespect for the law.  

Ganci further alleged that (1) based on evidence in the record, his age, background, institutional record, and his support system, there was "very little chance" that he would commit another crime or violate the conditions of his parole; (2) no evidence suggested that his release would have any adverse impact on institutional discipline; (3) on information and belief, prior to 1974, when Ganci committed the murder, the average length of time actually served by prisoners sentenced for murder was less than 20 years and an "extremely small" percentage of such prisoners served over 20 years; (4) from 1978 when the Board began considering parole cases, through 1981, the Board granted parole to 47% of the 13,591 prisoners whose parole cases it heard; (5) in 1982 alone, the percentage was 57%; (6) in 1983, the percentage dropped to 28% of cases heard; (7) between 1984 and 1992 (the last year for which statistics were available), the Board released between 2% and 5% of prisoners whose cases it considered; (8) on information and belief, virtually all prisoners who appeared before the Board from 1978 to the present were serving sentences for murder; (9) no change occurred in either the applicable statutes or administrative regulations that would account for the dramatic decrease in the number of prisoners approved for parole; (10) the Board effected the reduction in parolees by reinterpreting the third statutory criterion, 
i.e.
, the seriousness of the offense; (11) prior to 1983, the Board interpreted this criterion to require prisoners to serve about one-half of their minimum sentences, while after 1983, the Board's new interpretation barred parole for almost all prisoners serving sentences for murder; (12) on information and belief, the Board's reinterpretation was politically motivated, based on directives received from then Governor James R. Thompson and then Cook County State's Attorney Richard M. Daley, who complained about the short length of time that the average person convicted of murder served in prison; (13) in essence, Thompson and Daley "direct[ed]" the Board to increase the punishment given to prisoners convicted of murder; and (14) on information and belief, the Board denied Ganci parole in each of the years he appeared before it, based on its reinterpretation of the applicable statutory criteria.  On defendants' motion, Ganci's complaint was dismissed with leave to amend.  

B. Amended Complaint

On July 22, 1998, Ganci filed an amended complaint of two counts, the first for declaratory judgment and the second for a writ of 
mandamus
.  In count I, Ganci alleged the same factual matters as in his original complaint.  He alleged that the actions of the Board in denying him parole each year were arbitrary, capricious, and against the manifest weight of the evidence.  He also alleged that the actions were unconstitutional, based on an 
ex
 
post
 
facto
 change in the parole standards that had the effect of retroactively increasing his sentence in violation of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and section 16 of article I of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §16).  Ganci also alleged that the Board's decision to change its interpretation was based on a decision by the executive branch of government, rather than the legislative branch, in violation of the doctrine of separation of powers contained in section 1 of article II of the Illinois Constitution (Ill. Const. 1970, art. II, §1).  He requested an order declaring that the Board had increased his punishment in violation of his constitutional rights and requiring the Board to consider his parole case under the criteria in effect on June 8, 1974.  

In count II of the amended complaint, seeking a writ of 
mandamus
, Ganci alleged that, in denying his application for parole every year, the Board failed to perform its legally mandated duty under Illinois law and administrative regulations, thus violating Ganci's legal rights.  Ganci further alleged that, since he filed his original complaint in 1996, the Board was on notice of his demands and failed to follow proper procedures in 1997 and 1998.  He asked for a writ of 
mandamus
 commanding the Board to hold a new parole hearing in which all the procedures he identified be followed.  

On August 24, 1998, defendants filed a "MOTION FOR SUMMARY JUDGMENT," alleging that the trial court had previously found, pursuant to defendants' motion to dismiss Ganci's original complaint, that count I failed to state a cause of action on which relief can be granted.  As to count II, defendants alleged that the hearings were conducted pursuant to the applicable law and attached affidavits of Board members Barbara Hubbard and Anne Taylor.  In conclusion, the motion alleged that no genuine issues of material fact were raised that would preclude entry of judgment in favor of defendants and requested that summary judgment be entered.  

In a supporting legal memorandum, defendants noted, as to count I, that Ganci had presented the same arguments in his original complaint and that his amended complaint added nothing to suggest that the trial court was incorrect in dismissing it.  Defendants argued that parole is a matter of grace and executive discretion and not subject to the 
ex
 
post
 
facto
 prohibition.  The facts, as pleaded in the complaint, show that no new parole rule or regulation was in effect.  Defendants also argued that no separation of powers violation occurred, because the Board did not change Ganci's sentence.  The decision to release him prior to completion of his sentence is an executive function.  In conclusion, defendants stated that "[a]s this [c]ourt has previously found, [c]ount I fails to state a cause of action upon which relief may be granted.  Plaintiff is not entitled to the relief sought on [c]ount II.  Judgment should be entered in favor of defendants and against [Ganci]."  

Ganci's counsel requested that he be allowed to delay his response to defendants' motion to engage in discovery on procedures used by the Board in Ganci's case.  The record does not show that any order was entered on this motion.  However, the process of discovery began.  At a hearing on Ganci's motion to compel discovery as to his 
mandamus
 cause of action, the trial court ordered defendants to supply the requested materials and answer interrogatories.  Defendants refused to produce certain notes of members of the Board.  While Ganci's discovery requests were pending, the notes in question were destroyed.  In a written order entered on September 29, 1999, the trial court found that the notes were relevant to Ganci's allegations that meetings of the Board did not comply with the law.  The trial court awarded judgment to Ganci on count II of his complaint as a sanction.  The court further ordered defendants to grant Ganci a new hearing before the Board and to comply with all statutory and administrative rules.  

Ganci filed a response to defendants' motion for summary judgment, entitled "PLAINTIFF'S RESPONSE TO DEFENDANT'S SECTION 2-615 MOTION TO DISMISS AS TO COUNT ONE."  Ganci argued that (1) defendants' factual arguments and the affidavits of Hubbard and Taylor were directed at count II of the amended complaint; (2) defendants alleged as to count I of the complaint that Ganci had failed to state a cause of action; and (3) since defendants did not cite or rely on any evidence outside the four corners of the amended complaint, their motion was, in effect, a motion to dismiss under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 1998)).  

In a written order entered on January 18, 2000, the trial court granted defendants' motion as to count I.  The court cited cases in which the 
ex
 
post
 
facto
 clause was applied to the parole system.  However, the court noted that, in those cases, the prisoner had earned specific rights that were later revoked.  The court noted that Ganci did not allege that parole rules had changed; rather, he alleged that their interpretation had changed.  Whether a change in attitude was made based on political pressure or a changing view of society, such change is permitted in a discretionary act.  It is the eligibility for parole that may not be changed without violating the 
ex
 
post
 
facto
 clause.  Ganci's eligibility remained unchanged.  The trial court noted that, at best, it could be alleged that members of the Board are more sensitive to the protection of the public than were their predecessors or that they are more sensitive to the opinions of the political forces to whom they owe their appointment to the Board.  Regardless of the reason, the Board does no more than exercise the discretion with which it is vested.  This appeal followed.

II. ANALYSIS

A. Proper Construction of Defendants' Motion

Ganci argues that defendants' motion as to count I is properly construed as a motion to dismiss under section 2-615 of the Code.  That section allows parties to object to pleadings by motion.  The motion may request that the pleading be stricken as substantially insufficient in law, that the action be dismissed, a pleading be made more definite, designated immaterial matter be stricken, or necessary parties be joined or disjoined parties be dismissed.  735 ILCS 5/2-615(a) (West 1998).  Defendants styled their motion as one for summary judgment.  Such motions are governed by section 2-1005 of the Code.  735 ILCS 5/2-1005 (West 1998).  Summary judgment is entered only if the pleadings, depositions, and admissions on file, together with any affidavits presented by the parties, demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998).  

In ruling on a section 2-615 motion to dismiss, the court accepts as true the complaint's well-pleaded facts and all reasonable inferences drawn therefrom.  The ruling on a motion to dismiss is reviewed 
de
 
novo
.  
Nall v. International Ass'n of Machinists & Aerospace Workers
, 307 Ill. App. 3d 1005, 1008, 719 N.E.2d 300, 302 (1999).  

The affidavits of Hubbard and Taylor supported defendants' motion as to count II of Ganci's complaint.  Recognizing this fact, defendants argue on appeal that their motion as to count I of the amended complaint may still be characterized as a summary judgment motion, as Ganci failed to produce any proof to support his allegations in count I.  Defendants rely on 
Celotex Corp. v. Catrett
, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986), in support of their argument.  

In that case, Celotex filed a motion for summary judgment without supporting affidavits.  The motion alleged that Catrett had failed to identify in discovery any witnesses who could testify that her deceased husband had been exposed to Celotex's asbestos products.  
Celotex
, 477 U.S. at 320, 91 L. Ed. 2d at 272, 106 S. Ct. at 2551.  The district court granted the motion because no showing was made that the decedent had been exposed to Celotex's products.  
Celotex
, 477 U.S. at 319, 91 L. Ed. 2d at 271, 106 S. Ct. at 2550.  The court of appeals reversed, holding that Celotex's failure to produce any evidence negating such exposure precluded entry of summary judgment.  
Celotex
, 477 U.S. at 319, 91 L. Ed. 2d at 271, 106 S. Ct. at 2550. 

The United States Supreme Court found that the court of appeals' decision was contrary to Rule 56(c) of the Federal Rules of Civil Procedure.  That rule provides that summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The Court found that the plain language of the rule mandates the entry of summary judgment after adequate time for discovery and on motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.  
Celotex
, 477 U.S. at 322, 91 L. Ed. 2d at 273, 106 S. Ct. at 2552.  

The Court noted that the moving party in a summary judgment procedure always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings and discovery materials that it believes demonstrates the absence of any genuine issue of material fact.  
Celotex
, 477 U.S. at 323, 91 L. Ed. 2d at 274, 106 S. Ct. at 2553.  The Court noted that the action was filed in 1980, and Celotex filed its summary judgment motion in 1981.  The parties had conducted discovery, and Catrett could make no claim that she was "railroaded" by a premature motion for summary judgment.  
Celotex
, 477 U.S. at 326, 91 L. Ed. 2d at 276, 106 S. Ct. at 2554.

This court recognized a 
Celotex
-type motion in 
Hutchcraft v. Independent Mechanical Industries, Inc.
, 312 Ill. App. 3d 351, 726 N.E.2d 1171 (2000).  There, plaintiff, a laborer, received an electrical shock while working at a construction site.  Plaintiff sued defendants alleging negligent operation, placement, and inspection of welding units and welding lead lines at the site.  
Hutchcraft
, 312 Ill. App. 3d at 352, 726 N.E.2d at 1173.  Defendants moved for summary judgment.  The trial court granted the motions on the basis that plaintiff could not establish causation in fact based on surmise or conjecture as to the injury's cause.  
Hutchcraft
, 312 Ill. App. 3d at 352, 726 N.E.2d at 1173.  

On appeal, this court noted that there are two types of summary judgment motions.  The first affirmatively shows that some element of the case must be resolved in defendant's favor.  This method requires the defendant to prove something that it would not be required to prove at trial.  The second type of summary judgment motion is the 
Celotex
-type motion, in which the defendant points out the absence of evidence supporting the plaintiff's position.  
Hutchcraft
, 312 Ill. App. 3d at 355, 726 N.E.2d at 1174-75.  We noted that some Illinois cases may require the defendant to do more than merely point out the absence of evidence.  A 
Celotex
 motion is unusual in that it essentially places the burden of proof on the nonmovant.  In both types of motions, once the defendant has satisfied its initial burden of production, the burden shifts to the plaintiff to show some factual basis that would arguably entitle him to a judgment.  
Hutchcraft
, 312 Ill. App. 3d at 355, 726 N.E.2d at 1175.  

In 
Hutchcraft
, the defendants filed 
Celotex
-type motions, arguing that plaintiff could not establish who owned or was using the welding unit and lead lines at the time of the accident.  
Hutchcraft
, 312 Ill. App. 3d at 355-56, 726 N.E.2d at 1175.  This court noted that the issues of ownership and/or use of the welder and lead lines were critical to plaintiff's case.  Discovery had been taken on these issues.  While most witnesses were unable to say who owned or used the equipment, a few testified that one of the defendants owned the welding unit and that employees of the other defendant were using the lead lines at the time of the accident.  
Hutchcraft
, 312 Ill. App. 3d at 356, 726 N.E.2d at 1175.  This court found that this evidence presented fact questions as to ownership and use.  Accordingly, we reversed the grant of summary judgment as to those two defendants.  
Hutchcraft
, 312 Ill. App. 3d at 357, 726 N.E.2d at 1176.

Defendants in this case argue that their summary judgment motion was a 
Celotex
-type motion because Ganci was unable to produce any evidence to substantiate his allegation that the Board had secretly adopted a rule that was applied to him retroactively.  They note that Ganci had the opportunity to file counteraffidavits, but did not do so.  Ganci argues that defendants' "improper attempt" to transform their section 2-615 motion into a motion for summary judgment should be rejected by this court as "severely prejudicial" to him.  He maintains that all parties and the trial court treated defendants' motion as a section 2-615 motion to dismiss.  

We conclude that defendants' motion as to count I should be considered a section 2-615 motion to dismiss and not a motion for summary judgment.  We agree with Ganci that to treat the motion as one for summary judgment would result in unfair prejudice to him.  Defendants did not argue to the trial court that their motion should be treated as a 
Celotex
-type summary judgment motion.  No discovery had taken place regarding count I of the amended complaint.  The allegations of the motion itself, together with the arguments contained in defendants' memorandum of law in support of their motion, raise issues relating to the dismissal of Ganci's complaint, not summary judgment.  Accordingly, we address whether the trial court properly dismissed count I of Ganci's complaint.

B. Dismissal of Count I of the Amended Complaint

Section 3-3-5(c) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-3-5(c) (West 1998)) provides that the Board shall not parole a person eligible for parole if it determines that (1) a substantial risk exists that the person will not conform to reasonable conditions of parole; or (2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or (3) his release would have a substantially adverse effect on institutional discipline.  Section 3-3-5(h) of the Unified Code (730 ILCS 5/3-3-5(h) (West 1998)) provides that the Board shall promulgate rules regarding the exercise of its discretion under the section.

In 
Hanrahan v. Williams
, 174 Ill. 2d 268, 269, 673 N.E.2d 251, 252 (1996), a prisoner sued the Board challenging the denial of his parole.  He was convicted of murder and other offenses in 1976 and was sentenced to indeterminate prison terms.  He became eligible for parole in 1983.  In 1993, the Board conducted parole hearings and denied parole.  
Hanrahan
, 174 Ill. 2d at 270, 673 N.E.2d at 252.  The prisoner requested a writ of 
certiorari
 to review the Board's decision.  He alleged that the decision was arbitrary and capricious, an abuse of discretion, contrary to law, and against the manifest weight of the evidence.  The trial court granted the Board's oral motion to dismiss that count of the complaint as insufficient in law.  The appellate court reversed the dismissal, noting that no other avenue of review was open to the prisoner.  The Supreme Court of Illinois granted the Board's petition for leave to appeal.  
Hanrahan
, 174 Ill. 2d at 270-71, 673 N.E.2d at 252-53.  

The supreme court noted that a writ of 
certiorari
 is a general method for obtaining circuit court review of administrative actions when the statute conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review.  
Hanrahan
, 174 Ill. 2d at 272, 673 N.E.2d at 253.  The Board's duties are set forth by statute and by administrative rules promulgated by the Board.  
Hanrahan
, 174 Ill. 2d at 274, 673 N.E.2d at 254.  Rules adopted by the Board state that the Board grants parole as an exercise of grace and executive discretion and that the parole release decision is a subjective determination based on relevant information.  
Hanrahan
, 174 Ill. 2d at 275, 673 N.E.2d at 254-55.  The rules list factors that may be considered by the Board in determining whether to grant or deny parole.  However, the rules state that the parole decision is not limited to consideration of only those factors listed.  
Hanrahan
, 174 Ill. 2d at 275, 673 N.E.2d at 255.  

The supreme court noted that, in addition to the Board's rules, criteria have been set forth by the legislature under which the Board must deny parole.  The court noted that the statutory provisions do not state 
when
 the Board must grant parole.  The Board may consider any relevant information.  Thus, the court held that the statutory criteria and the Board's rules do not provide standards for release on parole that are sufficiently objective to allow a court to evaluate the Board's decision denying parole.  The legislature, in drafting the statutory language, intended the Board to have complete discretion in determining whether to grant parole when denial of parole is not mandated by statute.  
Hanrahan
, 174 Ill. 2d at 276, 673 N.E.2d at 255.  The court noted that, while 
amici
 
curiae
 filed briefs contending that certain constitutional rights of inmates subject to parole had been violated, neither party to the case raised those issues.  Accordingly, the court declined to address them.  
Hanrahan
, 174 Ill. 2d at 281, 673 N.E.2d at 257.  

Unlike the prisoner in 
Hanrahan
, Ganci alleges, not that the Board abused its discretion in denying him parole, but that the Board has informally changed the standards that it uses to make parole decisions for prisoners convicted of murder.  In doing so, according to Ganci, the Board violated the 
ex
 
post
 
facto
 clauses of the United States and Illinois Constitutions.  In addition, Ganci has squarely raised constitutional issues that were not addressed in 
Hanrahan
.  Therefore, that case does not apply to prevent Ganci from pursuing his present action.  

The 
ex
 
post
 
facto
 clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts.  
California Department of Corrections v. Morales
, 514 U.S. 499, 504, 131 L. Ed. 2d 588, 594, 115 S. Ct. 1597, 1601 (1995).  However, changes in rules effected by a parole board may also contravene the 
ex
 
post
 
facto
 prohibition.  For instance, in 
Garner v. Jones
, 529 U.S. 244, 247, 146 L. Ed. 2d 236, 242, 120 S. Ct. 1362, 1365 (2000),  Jones was convicted of murder and given a life sentence.  He escaped from prison, and before his recapture, committed another murder, for which he received a second life sentence.  A Georgia statute required the parole board to consider a prisoner serving a life sentence for parole after seven years.  
Garner
, 529 U.S. at 247, 146 L. Ed. 2d at 242, 120 S. Ct. at 1365-66.  When Jones committed his second offense, the parole board's rules required reconsideration to take place every three years.  Thereafter, the parole board amended its rules to provide that reconsideration of prisoners serving life sentences who had initially been denied parole would take place at least every eight years.  At all hearings denying Jones parole, the parole board cited his multiple offenses and the circumstances and nature of the second offense.  
Garner
, 529 U.S. at 247-48, 146 L. Ed. 2d at 242, 120 S. Ct. at 1366.

Jones sued, claiming that application to him of the parole board's amended rule violated the 
ex
 
post
 
facto
 clause.  The district court denied Jones' request for discovery and granted summary judgment to the parole board.  The court of appeals reversed, finding a violation of the 
ex
 
post
 
facto
 clause.  
Garner
, 529 U.S. at 248, 146 L. Ed. 2d at 243, 120 S. Ct. at 1366.  The Supreme Court reversed the court of appeals.  The Court noted that determining whether retroactive application of a change in parole law violates the 
ex
 
post
 
facto
 prohibition is particularly difficult when the discretion vested in a parole board is taken into account.  
Garner
, 529 U.S. at 249-50, 146 L. Ed. 2d at 244, 120 S. Ct. at 1367.  However, the Court observed that the presence of discretion does not displace the protections of the 
ex
 
post
 
facto
 clause.  The danger exists that legislatures might disfavor certain persons after the fact in the parole context, and the 
ex
 
post
 
facto
 clause guards against such abuses.  
Garner
, 529 U.S. at 253, 146 L. Ed. 2d at 246, 120 S. Ct. at 1369.  

The Court rejected the court of appeals' finding that the change in the rule seemed certain to result in some prisoners serving extended periods of incarceration.  A more rigorous analysis of the level of risk created by the change in law was  necessary.  When the rule, by its own terms, does not show a significant risk, the prisoner must demonstrate, by evidence taken from the practical implementation of the rule by the agency charged with exercising discretion, that the rule's retroactive application will result in the prisoner serving a longer period of incarceration than he would have served under the previous rule.  
Garner
, 529 U.S. at 255, 146 L. Ed. 2d at 247, 120 S. Ct. at 1370.  

The Court found that little evidence existed in the record about the level of risk created by the change in law.  Without such information, Jones' claim rested on speculation.  Thus, the Court could not determine on the record that the change lengthened Jones' actual time in prison.  It also stated that the matter of discovery was one for the court of appeals on remand.  The Court reversed the court of appeals' decision and remanded to that court for further proceedings.  
Garner
, 529 U.S. at 256-57, 146 L. Ed. 2d at 248-49, 120 S. Ct. at 1370-71.  

Here, no discovery was conducted regarding Ganci's allegation that the Board's alleged change in standards effectively denied him parole and thereby lengthened the time that he spent in prison.  Ganci cites 
People v. Fair
, 193 Ill. 2d 256, 260, 738 N.E.2d 500, 502 (2000), in which a postconviction petitioner alleged that circuit court Judge Paul Foxgrover, who presided over his trial and sentenced him, was corrupt.  Both before and after petitioner's trial and sentencing, Foxgrover had engaged in sentencing defendants to probation with fines or restitution and later converting the funds for his personal use.  Foxgrover was charged with and pleaded guilty to numerous criminal offenses.  
Fair
, 193 Ill. 2d at 259, 738 N.E.2d at 502.  The circuit court denied petitioner's discovery motion (
Fair
, 193 Ill. 2d at 263-64, 738 N.E.2d at 504) and granted the State's motion to dismiss, holding that petitioner failed to establish a nexus between his trial and Foxgrover's criminal conduct (
Fair
, 193 Ill. 2d at 260, 738 N.E.2d at 502).  On appeal, the supreme court held that petitioner must establish (1) a nexus between Foxgrover's criminal conduct and his conduct at petitioner's trial and (2) (a) actual bias resulting from Foxgrover's extrajudicial conduct or (b) Foxgrover had personal interest in the outcome of the trial.  
Fair
, 193 Ill. 2d at 263, 738 N.E.2d at 503-04.  

In light of this holding, the supreme court agreed with petitioner that, if he must establish a nexus between Foxgrover's criminal conduct and his conduct at petitioner's trial, the circuit court erred in denying petitioner's request for discovery to uncover the full extent of Foxgrover's corruption.  
Fair
, 193 Ill. 2d at 263, 738 N.E.2d at 504.  The court noted that, since Foxgrover pleaded guilty, petitioner was denied a public source of information that would have existed had Foxgrover gone to trial.  All the evidence of Foxgrover's criminal conduct remained in the exclusive control of the State.  Thus, it would be virtually impossible for petitioner to establish a nexus between Foxgrover's criminal conduct and petitioner's murder trial without access to the evidence possessed by the State.  
Fair
, 193 Ill. 2d at 266, 738 N.E.2d at 505.  The court held that petitioner was entitled to an opportunity to discover whatever evidence existed that connected Foxgrover's criminal conduct to his ability to preside impartially at petitioner's trial.  
Fair
, 193 Ill. 2d at 267, 738 N.E.2d at 506.

Defendants point out that the petitioner in 
Fair
 identified in his discovery motion specific items that he wished to discover, such as Foxgrover's confession and any interviews of witnesses conducted in the course of the investigation.  
Fair
, 193 Ill. 2d at 263-64, 738 N.E.2d at 504.  In contrast, Ganci has not identified any specific materials for discovery.  However, Ganci is in an even more difficult position here than was the petitioner in 
Fair
.  Ganci alleges that Board members have, in essence, entered into a "gentlemen's agreement" to treat applications for parole by convicted murderers differently than those submitted by other prisoners.  He has cited statements made by former Governor James R. Thompson and former Cook County State's  Attorney Richard M. Daley that were critical of the short length of time convicted murderers spent in prison.  He has alleged that the Board was influenced by those "directives" and changed the standards used to evaluate convicted murderers' parole applications.  Ganci has also cited statistics that suggest a significant reduction in the number of convicted murderers being paroled since 1983.  No formal changes in the Board's parole rules have been made, nor any statutory amendments passed by the legislature, that would explain this change.  In contrast, the petitioner in 
Fair
 was able to identify specific items for discovery because a record was made of the proceedings surrounding Foxgrover­'s involvement in the criminal justice system.  

All well-pleaded facts contained in Ganci's amended complaint must be taken as true for purposes of a section 2-615 motion to dismiss.  Ganci alleged that the Board had secretly adopted a new rule and cited statistics to support his allegations.  Any evidence concerning the adoption of this alleged unwritten rule lies within the exclusive control of defendants.  We recognize that Ganci did not request discovery as to count I of his amended complaint prior to its dismissal.  However, we do not view this fact as significant.  We conclude that the allegations of count I are sufficient to withstand a section 2-615 motion to dismiss at this stage of the proceedings.  

III. CONCLUSION

Accordingly, we vacate the trial court's dismissal of count I of Ganci's amended complaint and remand for further proceedings.  

Vacated and remanded.  

MYERSCOUGH and COOK, JJ., concur.

FOOTNOTES
1:
Justice Garman fully participated in this opinion prior to her appointment to the Supreme Court of Illinois.