813 A.2d 688

**Walter WINKLESPECHT, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Supreme Court of Pennsylvania.

Submitted Nov. 20, 2001.

Decided Dec. 31, 2002.

686

David R. Crowley, Bellefonte, for Walter Winklespecht.

John G. Knorr, Harrisburg, for Com.

Calvin Royer Koons, Harrisburg, for Com., Pa. Board of Probation and Parole.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice EAKIN.

Walter Winklespecht, a state prisoner, petitions this Court for writ of habeas corpus. Winklespecht challenges the Pennsylvania Board of Probation and Parole's decision to deny him parole, and claims this denial violated the *ex post facto* clause of the United States Constitution. *See* U.S. Const. Art. I, § 10.

In 1988, Winklespecht was sentenced to 7–20 years imprisonment for rape and involuntary deviate sexual intercourse, and to a consecutive term of five years probation for aggravated assault. He was denied parole October 19, 1994, October 17, 1995, October 25, 1999, and October 23, 2000. The Board listed the following reasons for denial of parole in 1994 and 1995:

POOR PRISON ADJUSTMENT.

SUBSTANCE ABUSE.

HABITUAL OFFENDER.

ASSAULTIVE INSTANT OFFENSE.

VERY HIGH ASSAULTIVE BEHAVIOR POTENTIAL.

VICTIM INJURY.

YOUR NEED FOR ... COUNSELING AND TREAT-
MENT.

Notices Of Board Decision, 10/26/94 and 12/09/95.

The Board gave the following explanations for its denials in 1999 and 2000:

FOLLOWING AN INTERVIEW AND REVIEW OF YOUR FILE, THE PENNSYLVANIA BOARD OF PRO-BATION AND PAROLE HAS DETERMINED THAT *THE MANDATES TO PROTECT THE SAFETY OF THE PUBLIC AND TO ASSIST IN THE FAIR ADMINIS-TRATION OF JUSTICE CANNOT BE ACHIEVED* THROUGH YOUR RELEASE ON PAROLE. YOU ARE THEREFORE REFUSED PAROLE....

Notice Of Board Decision, 10/25/99 (emphasis added).

FOLLOWING AN INTERVIEW AND REVIEW OF YOUR FILE, THE PENNSYLVANIA BOARD OF PRO-BATION AND PAROLE HAS DETERMINED THAT *THE FAIR ADMINISTRATION OF JUSTICE CANNOT BE ACHIEVED* THROUGH YOUR RELEASE ON PA-ROLE.

Notice of Board Decision, 10/23/00 (emphasis added).

The emphasized language in the 1999 and 2000 notices is found in § 331.1 of the Parole Act, as revised in 1996:

§ 331.1.   Public Policy as to parole

The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.

In providing these benefits to the criminal justice system, the board shall first and foremost seek to *protect the safety of the public.* In addition to this goal, the board shall address input by crime victims and *assist in the fair admin-*

*istration of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (emphasis added).

With respect to policy, the prior version of the Act read: The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Act 1941, Aug. 6, P.L. 861, § 1.

■ Following the most recent denial of parole, Winklespecht attempted to appeal to the Commonwealth Court by filing a petition for review. The court concluded he was seeking to appeal from an unappealable order, and dismissed the petition. Pursuant to this Court's original jurisdiction, *see* 42 Pa.C.S. § 721(1), Winklespecht filed an application to file original process in this Court, and also filed his habeas corpus petition. We granted Winklespecht leave to file the petition, directed he receive appointed counsel, and ordered the parties to file briefs.[1]

Winklespecht argues the changes in the Parole Act between the time of his crimes and his 1999 and 2000 parole applications unconstitutionally subjected him to an *ex post facto* law. He asserts such claim is cognizable under Pennsylvania's habeas corpus statute, and that the proper venue for filing a

1. In his habeas petition, Winklespecht also argued that an intervening federal law, the Federal Violent Offenders Truth in Sentencing Act, 42 U.S.C. § 13703, and changes in unspecified Parole Board guidelines violated the *ex post facto* clause. Winklespecht does not raise these issues in his brief, focusing instead on his claims involving state statutory law; therefore, we deem these other claims abandoned and will not address them.

habeas corpus petition is the court of common pleas in the county where the sentence was imposed.

This Court has not yet answered the question of whether habeas corpus is an available remedy for the denial of parole based on an *ex post facto* violation, nor have we determined the proper venue for seeking such relief. It is well settled, however, that a prisoner has no legitimate expectation of being paroled after serving the minimum sentence, *Rogers v. Pennsylvania Bd. of Probation and Parole*, 555 Pa. 285, 724 A.2d 319 (1999), and, due to the discretionary nature of the decision to deny parole, no right to appeal is available under the Administrative Agency Law, 2 Pa.C.S. § 101. *See Rogers*, at 321.

Relying on the rationale in *Rogers*, this Court, in *Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287 (2001), held that where a challenge to the denial of parole is not based on the exercise of the board's discretion, but instead on the board's application of new statutory requirements, an *ex post facto* challenge may be raised in an action for mandamus brought in the Commonwealth Court. *Id.*, at 290. The availability of habeas corpus as a remedy was not discussed by the majority, presumably because the parties did not argue its application. Justice Castille, concurring in *Coady*, criticized the decision in *Weaver v. Pennsylvania Bd. of Probation and Parole*, 688 A.2d 766, 775 n. 17 (Pa.Cmwlth.1997) (constitutional challenge to denial of parole cannot properly be raised in habeas corpus proceeding), and noted, "there is a very strong argument that state habeas corpus review of the constitutional claim at issue here is not clearly foreclosed under this Court's jurisprudence ...," or by statute. *Coady*, at 294.

▉▉▉▉ An *ex post facto* law is one which is "adopted after the complaining party committed the criminal acts and 'inflicts a greater punishment than the law annexed to the crime, when committed.'" *Coady*, at 289 n. 2 (quoting *California Dep't. of Corrections v. Morales*, 514 U.S. 499, 504–06, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)).

One function of the *Ex Post Facto Clause* is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Whether retroactive application of a particular change in parole law respects the prohibition on *ex post facto* legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account.

*Garner v. Jones*, 529 U.S. 244, 249–50, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) (citations omitted).

Although Winklespecht couches his underlying claim as an *ex post facto* violation, clearly his punishment has not been increased. The rewording of 61 P.S. § 331.1 did not create a substantial risk that parole would be denied any more frequently than under the previous wording, nor did the addition of this language create a new offense or increase the penalty for an existing offense.[2] *See Morales*, at 506 n. 3, 115 S.Ct. 1597 ("the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor, . . . on whether an amendment affects a prisoner's '*opportunity* to take advantages of provisions for early release'. . . ."). Although the language concerning "protect[ing] the safety of the public" and "assist[ing] in the fair administration of justice" was added to § 331.1 in 1996, these concepts are nothing new to the parole process and have always been underlying concerns. Both versions of § 331.1 leave the decision regarding the grant of parole within the discretion of the Board; the fact that some language was added in 1996, which clarified the policy underlying the parole process, does nothing that increases Winklespecht's punishment. *See Prater v. U.S. Parole Com.*, 802 F.2d 948, 952 (7th Cir.1986) ("If . . . the Parole Commission takes a more jaundiced view of applications for parole, the ex post facto prohibition is not violated, even though a criminal's punishment may

---

**2.** An identical *ex post facto* challenge to the rewording of 61 P.S. § 331.1 was raised by petition for writ of mandamus in *Finnegan v. Pennsylvania Board of Probation and Parole,* 156 MAP 2001.

end up being longer or harsher than he hoped when he committed the crime."). Reordering of considerations for necessary decisions within an unchanged penalty do not rise to an *ex post facto* violation.

Therefore, Winklespecht's claims do not raise an *ex post facto* issue.[3] As Winklespecht has failed to articulate a true constitutional claim, no relief is due, and we leave for another day the question of the propriety of habeas corpus as a remedy.

The petition for writ of habeas corpus is hereby denied.

Justice CAPPY files a concurring opinion.

Justice CASTILLE files a concurring opinion in which Justice Newman joins.

Chief Justice ZAPPALA and Justice NIGRO concur in the result.

Justice SAYLOR files a concurring and dissenting opinion.

Justice CAPPY, Concurring.

I concur in the result. I agree with Mr. Justice Saylor that the appropriate avenue of relief is a writ of mandamus, and I would dismiss the petition on that basis, without reaching the merits of the underlying issue.

Justice CASTILLE, Concurring.

For the reasons stated in my concurring opinion in *Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287 (2001) (Castille, J., concur-

---

**3.** Winklespecht makes the same claim with respect to an addition in the October 23, 2000 Notice of Board Decision, which provides a sex offender evaluation be available at the time of Winklespecht's next review. *See* 42 Pa.C.S. § 9795.4(g) (Board may request assessment of sexually violent predator be conducted and report be provided to Board prior to considering offender or sexually violent predator for parole). The essence of Winklespecht's claim, in the context of an *ex post facto* argument, is that permitting the Board to request a sex offender evaluation results in the imposition of greater punishment than at the time he was convicted. The issue of whether this unconstitutionally increases the penalties to which a defendant is exposed is currently before this Court in *Commonwealth v. Williams*, 61 WAP 2001 (argued April 8, 2002).

ring), which was joined by Madame Justice Newman, I am inclined to believe that non-frivolous constitutional challenges to the denial of parole are cognizable under Pennsylvania's habeas corpus statute, 42 Pa.C.S. § 6501 *et seq.* *See also Commonwealth v. Haag,* 809 A.2d 271 (Pa.2002) (Castille, J., concurring). Although this Court has nonexclusive original jurisdiction of all cases sounding in habeas corpus, *see* 42 Pa.C.S. § 721(1), I believe that the better practice is for such petitions to be filed with the sentencing court pursuant to Pa.R.Crim.P. 108(A) ("A petition for writ of habeas corpus challenging the legality of the petitioner's detention or confinement in a criminal matter shall be filed with the clerk of courts of the judicial district in which the order directing the petitioner's detention or confinement was entered.").

I fully agree, however, with the lead opinion's conclusion that the constitutional *ex post facto* claim raised here—a claim this Court has seen raised with increasing frequency on our allocatur and miscellaneous dockets—is entirely meritless. Subject to the foregoing qualifications concerning the cognizability of and venue for such claims, I join the lead opinion.

Justice NEWMAN joins this concurring opinion.

Justice SAYLOR, Concurring and Dissenting.

In this decision the Court, upon petition for a writ of habeas corpus, proceeds to review the Petitioner's constitutional challenge to the denial of his application for parole.[1] After concluding that there is no merit to Petitioner's underlying claim, and correspondingly that no relief is due, the majority then states that "we leave for another day the question of the propriety of habeas corpus as a remedy." Majority Opinion, at 692. I believe that this approach may have unintended consequences.

1. In granting Petitioner's application to file original process, this Court directed that the parties brief three separate issues: 1) whether a claim that a denial of parole violated *ex post facto* prohibitions, *see* U.S. Const. art. 1, § 10, is cognizable under Pennsylvania's habeas corpus statute; 2) if so, in which court should the habeas petition initially be filed; and 3) whether the Parole Board violated such principles when it denied Petitioner parole.

Recourse to the writ of habeas corpus, historically used to test the legality of custody, *see Commonwealth ex rel. Paulinski v. Isaac,* 483 Pa. 467, 471, 397 A.2d 760, 762 (1979), is more of a right than a "remedy." *See Commonwealth ex rel. Milewski v. Ashe,* 362 Pa. 48, 50, 66 A.2d 281, 282 (1949); *Commonwealth ex rel. Penland v. Ashe,* 341 Pa. 337, 340, 19 A.2d 464, 466 (1941) (observing that habeas corpus is a "writ of right" and not a "writ of error"). Upon habeas petition allowed, the writ issues, directed to the authorities and ordering them to produce the prisoner and "certify[] the true cause of detention." 42 Pa.C.S. § 6504.[2] Following review, if the issuing court finds merit to the allegations of wrongful detention, the ultimate remedy is a release from custody or confinement. *See Commonwealth v. Hess,* 489 Pa. 580, 586, 414 A.2d 1043, 1046 (1980). By passing upon the merits of Petitioner's constitutional claim, therefore, the court has, in effect, afforded habeas review, while simultaneously denying that it is deciding the question of whether such review may be had. This method suggests, moreover, that any prisoner incarcerated within the Commonwealth's penal system who is denied parole will be entitled, upon the filing of a habeas corpus petition, to Supreme Court merits review of any alleged constitutional deprivation. The more prudent course, in my view, would be to simply dismiss the petition, as Petitioner's underlying claim is not cognizable under a habeas corpus paradigm.

Habeas corpus is an extraordinary measure, which " 'involves a collateral attack on the process or judgment constituting the basis of the detention.' " *Commonwealth ex rel. McGlinn v. Smith,* 344 Pa. 41, 48, 24 A.2d 1, 5 (1942) (quoting *Goto v. Lane,* 265 U.S. 393, 401, 44 S.Ct. 525, 527, 68 L.Ed. 1070 (1924)). Thus, while the scope of the writ is broad, its purpose has traditionally been limited to reaching detention which is illegal in the first instance. *See McGlinn,* 344 Pa. at 48, 24 A.2d at 5. Although, in recent years, the writ has also

---

2. Ordinarily, however, the writ may not issue unless the application contains allegations which, if true, would show illegal detention. *See Milewski,* 362 Pa. at 50, 66 A.2d at 282–83.

been used as a vehicle to obtain prison transfer where the conditions of confinement violate fundamental freedoms, *see Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 88–89, 280 A.2d 110, 112–113 (1971) (habeas relief available where prison conditions constitute cruel and unusual punishment), the fact remains that the habeas petitioner's underlying contention is that he is entitled to be delivered from the custody of the authorities presently holding him. *See Commonwealth ex rel. Smith v. Ashe,* 364 Pa. 93, 101, 71 A.2d 107, 111 (1950) (observing that " 'habeas corpus should only be allowed when the court or judge is satisfied that the party hath probable cause to be delivered' ") (quoting 3 Blackstone 132); *Commonwealth ex rel. Milewski v. Ashe,* 362 Pa. 48, 50, 66 A.2d 281, 282–83 (1949) (habeas corpus may only issue where the petitioner's allegations, if true, would entitle him to release from confinement). *See generally Commonwealth ex rel. Codispoti v. Rundle,* 200 Pa.Super. 487, 489, 190 A.2d 153, 154 (1963) (the function of a court entertaining a habeas petition is limited to delivering from imprisonment those who are illegally confined).

This Petitioner's underlying claim, by contrast, constitutes a challenge only to the standards employed by the Parole Board when it exercised its discretion after the relevant statutory changes took effect. Thus, even assuming the validity of his interpretation of the *Ex Post Facto* Clause, the only relief to which he would be entitled would be an order directing the Parole Board to re-consider his suitability for parole under the standards existing when he was sentenced. This is mandamus relief.[3]

**3.** Even if Petitioner were seeking an order directing the Parole Board to order Petitioner's release on parole, it is not apparent that habeas corpus would be an appropriate avenue to such relief. This court has stated that parole

is a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls; it does not set aside or affect the sentence and the convict remains in the legal custody of the state and under the control of its agents, subject at any time for breach of condition, to be returned to the penal institution.

This Court, moreover, has already determined that, where the Parole Board exercises its discretion pursuant to changed statutory requirements, mandamus "remains viable as a means for examining whether such requirements have been altered in a manner that violates the *ex post facto* clause," *Coady v. Vaughn*, 564 Pa. 604, 608–09, 770 A.2d 287, 290 (2001), the very claim that Petitioner advances here. Thus, I see no need for an additional avenue of review, particularly one that, as noted, does not traditionally encompass decisions regarding parole. *See generally McGlinn*, 344 Pa. at 48, 24 A.2d at 4–5 (observing that habeas corpus can only be successfully invoked where there is a "peculiar and pressing need for it"); *Paulinski*, 483 Pa. at 471, 397 A.2d at 762–63 (1979) (habeas corpus is only available when other remedies have been exhausted); *Commonwealth ex rel. Johnson v. Bookbinder*, 213 Pa.Super. 335, 339, 247 A.2d 644, 647 (1968) (habeas is not available when mandamus is employable). Accordingly, I would hold that habeas corpus does not lie to challenge the standards utilized by the Parole Board in denying parole, and would dismiss the petition on that basis without reaching the merits of the constitutional issue presented.

With regard to the majority's treatment of the underlying issue, I agree that Petitioner's substantive claim is not meritorious. One function of the *Ex Post Facto* Clause is to prevent states from enacting laws which increase the punishment for a crime after its commission. *See* U.S. CONST., art. I, § 10, cl. 1. While laws altering the standards for parole eligibility may fall within the scope of that proscription, *see Lynce v. Mathis*, 519 U.S. 433, 445–46, 117 S.Ct. 891, 898, 137 L.Ed.2d 63 (1997)

*Commonwealth ex rel. Sparks v. Russell*, 403 Pa. 320, 323, 169 A.2d 884, 885 (1961) (*per curiam*) (citing *Commonwealth ex rel. Banks v. Cain*, 345 Pa. 581, 585, 28 A.2d 897, 899 (1942)). Accordingly, although, once released, a parolee retains a liberty interest in his continued freedom from incarceration, *see Rogers v. Pennsylvania Bd. of Probation and Parole*, 555 Pa. 285, 291, 724 A.2d 319, 322 (1999), he nonetheless remains in the legal custody of the state. *See Commonwealth ex rel. Ensor v. Cummings*, 420 Pa. 23, 26, 215 A.2d 651, 652 (1966). Consequently, a decision to grant parole neither extinguishes such custody nor impugns the validity of the prior detention. *Cf. id.* (concluding that release on parole did not render prior habeas petition moot because petitioner's freedom was still restricted by conditions of parole).

(citing *Weaver v. Graham*, 450 U.S. 24, 32, 101 S.Ct. 960, 966, 67 L.Ed.2d 17, 24–26 (1981)), it "should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.'" *Garner v. Jones*, 529 U.S. 244, 252, 120 S.Ct. 1362, 1368, 146 L.Ed.2d 236 (2000) (quoting *California v. Morales*, 514 U.S. 499, 508, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995)). Instead, the states "must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Id.* Consequently, there is no *per se* rule precluding retroactive changes in parole procedures or guidelines, even where such measures may potentially alter a prisoner's actual term of confinement. *See Morales*, 514 U.S. at 506 n. 3, 115 S.Ct. at 1602 n. 3 (the mere fact that a legislative change may work "some ambiguous sort of 'disadvantage'" to the prospective parolee is insufficient to support a determination that an *ex post facto* violation has occurred). The controlling inquiry is whether the retroactively-applied rule "creates a significant risk of prolonging [Petitioner's] incarceration." *Jones*, 529 U.S. at 251, 120 S.Ct. at 1368 (citing *Morales*, 514 U.S. at 509, 115 S.Ct. at 1603).

The Supreme Court has not defined precisely what constitutes a sufficient risk of increased punishment, and indeed, has repeatedly eschewed use of any single formula for identifying those legislative parole adjustments which would survive an *ex post facto* challenge. *See, e.g., Jones*, 529 U.S. at 252, 120 S.Ct. at 1368. It has, however, noted that the question is a matter of degree, *see id.* at 250, 120 S.Ct. at 1367, and indicated further that the party asserting an *ex post facto* claim bears the burden of "establishing that the measure of punishment itself has changed." *Morales*, 514 U.S. at 510 n. 6, 115 S.Ct. at 1603 n. 6. In further defining this standard, the Supreme Court recently indicated that, "[w]hen the rule does not by its own terms show a significant risk, the [challenger] must demonstrate, by evidence drawn from the rule's practical implementation ... that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Jones*, 529 U.S. at 255, 120 S.Ct. at 1370. This creates

a two-step inquiry, including a facial analysis of the rule—considered within the entire context of the state's parole system, *see id.* at 252, 120 S.Ct. at 1368—as well as a review of how the amendment is likely to be applied. In undertaking this analysis, the recent Supreme Court decisions in *Morales, Jones,* and *Lynce* provide guidance.

*Morales* involved a facial challenge to a change in California's parole regulations whereby the parole board had discretion to wait up to three years to reconsider releasing individuals convicted of multiple murders, rather than holding annual suitability reviews as required under the prior law. The Court upheld the statute, noting that the affected inmates were those least likely to be deemed suitable for parole in any event, and hence, the amendment created only a speculative, attenuated risk of increasing their punishment. *See Morales,* 514 at 508–09, 115 S.Ct. at 1603. Likewise, in *Jones* the petitioner challenged a revision in Georgia's parole guidelines, which increased the maximum interval between parole suitability considerations from three to eight years. The Supreme Court determined that such change did not create a sufficient risk of prolonged incarceration because the parole board retained discretion to reconsider a prisoner for release well before the eight-year period expired, particularly where a change in circumstances warranted expedited review. Furthermore, the board's internal guidelines dictated that it would only wait the full eight years when the inmate was not expected to become suitable for parole in any event. This allowed the board to "put its resources to better use, to ensure that those prisoners who should receive parole come to its attention." *Jones,* 529 U.S. at 254, 120 S.Ct. at 1370. In *Lynce,* on the other hand, the Court disallowed a Florida parole amendment which retroactively cancelled provisional early release credits, resulting in the petitioner's re-arrest and incarceration. In striking down the law, the Court noted that, unlike the California amendment at issue involved in *Morales,* the Florida statute "did more than simply remove a mechanism that created an *opportunity* for early release for a class of prisoners whose release was unlikely; rather, it made

ineligible for early release a class of prisoners who were previously eligible—including some, like petitioner, who had actually been released." *Lynce,* 519 U.S. at 447, 117 S.Ct. at 898 (emphasis in original).

Because the amendment presently under review applies to all prisoners, it arguably creates a greater risk of increased punishment than the rule at issue in *Morales,* which, as noted, only pertained to inmates convicted of multiple murders. Additionally, it addresses the manner in which the Board must exercise its discretion, as indicated by the word "shall." *See* 61 P.S. § 331.1; Majority Opinion, at 690. In this respect, it is not subject to qualification by internal Board guidelines or policy, as was the change at issue in *Jones.* Consequently, I believe that this is a closer case than can be gleaned from the majority opinion. *See* Majority Opinion, at 691 (stating that Petitioner's punishment "clearly" has not been increased). Still, as noted, the change must not be analyzed in isolation, but within the context of Pennsylvania's parole system as a whole. *See Jones,* 529 U.S. at 252, 120 S.Ct. at 1368. In this regard, it is worth noting that, under Section 21(a) of the Act, 61 P.S. § 331.21(a), release on parole has traditionally been deemed appropriate only when "it does not appear that the interests of the Commonwealth will be injured thereby." Such interests manifestly subsume public safety, as well as the fair administration of justice. *See generally Reynolds v. Pennsylvania Bd. of Probation and Parole,* 809 A.2d 426, (Pa.Cmwlth.2002) (undertaking a detailed review of the standards embodied in the Parole Act prior to, and after, the legislative amendment here at issue, and ultimately concluding that the changes to Section 1 of the Act, 61 P.S. § 331.1, did not effect an overall revision in the standards for determining an inmate's suitability for release).[4] Thus, under longstanding

4. In *Reynolds,* the Commonwealth Court opined that

the former and current versions of Section 1 of the Parole Act are general statements of public policy and philosophy and do not affect an offender's eligibility or opportunity to be paroled. Rather they are a legislative emphasis and reminder to the Board to make paroling decisions in accordance with the factors set forth in 61 P.S. § 331.19. Section 1 does not change the parole review process so that it no

statutory guidelines, the Board, in exercising its discretion, has always been required to take public safety concerns into account. While the statutory changes may have placed particular emphasis on such considerations, any conclusion that there is a substantial risk of prolonging incarceration sufficient to offend *ex post facto* prohibitions would appear to be based upon mere conjecture. *Accord In re Haynes,* 100 Wash.App. 366, 996 P.2d 637, 644–45 (2000); *cf. Powell v. Ray,* 301 F.3d 1200, 1203–04 (10th Cir.2002) (finding no *ex post facto* violation where the petitioner only offered speculation that elimination of pre-parole supervised release program would increase his term of incarceration). Accordingly, there is no facial violation of the *Ex Post Facto* Clause.

The second portion of the analysis involves whether the change is likely to be applied so as to enhance inmates' punishment. In this regard, it is notable that the Board's articulation of its reasons for denying parole in 1999 and 2000 appear drawn from the text of the 1996 amendment. *See* Majority Opinion, at 690. While this may weigh in favor of a conclusion that the amendment has, in practical effect, disadvantaged Petitioner in his quest for early release, it is not, in my view, sufficient in itself to support such conclusion, or, more generally, a claim that the rule's overall application is likely to increase punishment. As already explained, the basis for denial recited in Petitioner's post–1996 dispositions reflects the Commonwealth's longstanding review policy as embodied in other portions of the statute. Therefore, absent some evidence of a systemic change in the rate at which the Board grants parole, or other proof regarding changes in parole frequency following the 1996 amendment, Petitioner cannot carry his burden of establishing that the Constitution has been violated. *See Morales,* 514 U.S. at 510 n. 6, 115 S.Ct. at 1603 n. 6; *cf. Ganci v. Washington,* 318 Ill.App.3d 1174, 253

longer begins with the best interest of the convict because 61 P.S. § 331.21 also states that parole be appropriate when "it does not appear that the interests of the Commonwealth will be injured thereby." Therefore, Section 1 only reemphasizes that there is a pre-existing consideration of public safety as already indicated in 16 P.S. § 331.21[.]
Id. at 432.

Ill.Dec. 268, 745 N.E.2d 42, 52 (2001) (overruling a demurrer where the petitioners had placed into the record statistical evidence suggesting that the amended parole rules had resulted in a significant reduction in the rate of release for similarly-situated prisoners). As Petitioner has failed to adduce any such evidence, his claim must fail.[5]

---

**5.** Petitioner's claim premised upon the Board's requesting a sexually violent predator assessment is also meritless. Such request, standing alone, does not shed any light upon the basis for the 1999 and 2000 parole denials, nor is it sufficient to indicate that the Board's future actions will violate *ex post facto* principles.