NOTICE

Decision filed 02/24/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0426

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| WILLIAM R. HILL, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Alexander County. |
| | ) |
| v. | ) No. 06-MR-29 |
| | ) |
| ROGER E. WALKER, JR., Director of Corrections, | ) |
| and JORGE MONTES, Chairman, Illinois Prisoner | ) |
| Review Board, | ) Honorable |
| | ) Mark H. Clarke, |
| Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, William R. Hill, is a prisoner at Tamms Correctional Center serving two concurrent prison terms of 30 to 90 years each for murder. Hill was sentenced in 1980 and became eligible for parole in 1983. In 2006, he filed this civil complaint seeking a declaratory judgment and a writ of *mandamus*. In it, he alleged that (1) the law permitting his parole hearings to be scheduled less frequently than once a year is an *ex post facto* law, (2) the way the Illinois Prisoner Review Board has interpreted one of the statutory criteria for parole, "the seriousness of the offense," has changed since he was sentenced in 1980, and this change violates both *ex post facto* principles and separation-of-powers principles, and (3) the Prisoner Review Board deprived him of fair parole hearings in 2002 and 2006 by taking into consideration improper criteria. Hill now appeals an order of the trial court dismissing his complaint. We affirm.

In 1974, Dr. Max Murphy Kaye hired Hill to murder pharmacist Robert Fields. On August 23, 1974, Hill shot and killed a pharmacist he believed to be Fields. He later

1

learned, however, that he had killed the wrong pharmacist. Instead of shooting Fields, he had killed 61-year-old Allen Zipperstein. Hill promised Dr. Kaye that he intended to finish the job, and on January 18, 1975, he shot and killed Robert Fields.

Hill was tried before a jury, was found guilty, and was sentenced to death. On appeal, the Illinois Supreme Court reversed his convictions and remanded the case for a new trial. *People v. Hill*, 78 Ill. 2d 465, 401 N.E.2d 517 (1980). The court found that a reversal was required because the trial court had erred by admitting inculpatory statements that Hill had made during the course of plea negotiations. *Hill*, 78 Ill. 2d at 469-74, 401 N.E.2d at 519-22. The court went on to consider whether Hill could be sentenced to death on remand for crimes committed in 1974 and 1975, prior to the enactment of the death penalty statute in 1977. *Hill*, 78 Ill. 2d at 474, 401 N.E.2d at 522. The court found that the legislature did not intend for the death penalty statute to be applied retroactively, and it ruled that on remand Hill could not be sentenced to death. *Hill*, 78 Ill. 2d at 476, 401 N.E.2d at 522.

On remand, Hill pled guilty to the crimes. The court sentenced him to a concurrent prison sentence of 30 to 90 years for each murder. Under the sentencing laws then in effect, he became eligible to be considered for parole in 1983. The Prisoner Review Board (the Board) held annual parole hearings for Hill in May 1983, March 1984, January 1985, April 1986, and April 1987. Each time, the Board denied parole, basing its decision primarily on the seriousness of the offense.

In 1988, the Illinois legislature amended the law governing parole. Under the new law, parole hearings can be set as much as three years apart, as long as the Board finds that it is not reasonably likely to grant parole prior to that time. Subsequent to this change, the Board held parole hearings for Hill in February 1988, February 1991, February 1992, May 1993, May 1994, May 1995, May 1996, November 1997, November 1998, October 1999, December 2002, and January 2006. Again, the Board denied parole each time primarily on

2

the basis that granting parole would deprecate the seriousness of the offense. In the 2002 and 2006 decisions, the Board noted several disciplinary infractions that had occurred in 2000. Hill contends that these were all based on accusations made against him by a Department of Corrections official who was not impartial. This claim forms the basis of some of his arguments on appeal.

On May 5, 2006, Hill filed a *pro se* complaint seeking a writ of *mandamus*. He named as defendants Roger E. Walker, Jr., Director of Corrections, and Jorge Montes, the chairman of the Illinois Prisoner Review Board. (For the sake of simplicity, we will refer to the defendants collectively as "the Board.") Hill alleged that members of the Board "failed to perform their legally mandated duties in conformance" with the state and federal constitutions. On May 31, Hill filed a memorandum of law supporting his complaint. On July 25, 2006, the Board filed a motion to dismiss, arguing, among other things, that *mandamus* is not an appropriate remedy where the plaintiff seeks to compel actions that are discretionary.

On August 8, 2006, with the Board's motion still pending, Hill filed an amended complaint seeking both a declaratory judgment and a writ of *mandamus*. Hill alleged that in each decision denying parole, the Board mentioned the fact that he had been initially sentenced to death but that the death sentence had been overturned. This, he contended, overrode any consideration of his rehabilitative efforts. He argued that the consideration of his overturned death sentence as a "factor" in denying him parole violated due process.

Hill next alleged that at the time he was sentenced on remand in 1980, parole was granted to approximately 50% to 60% of prisoners who came before the Board. In 2006, however, the Board granted parole to only 10% of prisoners eligible to be considered for parole. According to Hill, this was because former Illinois Governor Jim Thompson and former Cook County State's Attorney Richard Daley had directed the Board to adopt a new

3

interpretation of the term "seriousness of the offense." He argued that applying this "reinterpretation" to him violated both *ex post facto* principles and separation-of-powers principles. In addition, he alleged that the Board's decisions to set some of his parole hearings at intervals of longer than one year violated the *ex post facto* clauses of the state and federal constitutions.

Finally, Hill alleged that the Board based its 2002 and 2006 decisions denying parole on 12 disciplinary violations that had occurred in 2000. As previously mentioned, he contended that these infractions were the result of a biased correctional officer. More specifically, Hill alleged in his complaint that the corrections officer involved in investigating the incidents was a drug user who appeared to be under the influence. He argued that the Board's reliance on the disciplinary recommendations of an "unimpartial [*sic*] decision[]maker" violated his right to the due process of law.

Count I of the amended complaint sought a declaratory ruling that the 2002 and 2006 decisions to deny parole violated principles of due process. Count II requested a writ of *mandamus* ordering the Board to provide Hill with a parole hearing and render a decision under the statutory and regulatory criteria for parole "as they were utilized" when his crimes were committed in the 1970s.

On November 16, 2006, the Board filed a motion to dismiss the amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)). On December 26, Hill filed a motion for leave to file a second amended complaint. The court granted that motion, and the second amended complaint was filed with the court on December 28. The allegations of the second amended complaint were essentially identical to those of the first amended complaint. In addition to those allegations, Hill alleged that the reasons given by the Board in its various decisions denying him parole were not sufficient to meet the requirements of due process. He further alleged that the Board has a

4

nondiscretionary duty to follow its own regulations, thus making *mandamus* an appropriate remedy.

On May 4, 2007, Hill filed a motion for a judgment on the pleadings, arguing that the Board had failed to respond to his second amended complaint or comply with his discovery requests. On May 15, the Board filed a response to Hill's motion, arguing that the court did not grant leave to file the second amended complaint and that, therefore, it was never filed. On May 31, the court entered an order. The court found that the Board apparently did not get a copy of the December 28 order granting leave to file the second amended complaint. The court ordered the Board to respond to the second amended complaint, denied the November 16 motion to dismiss on the grounds that it was moot, and denied Hill's motion for a judgment on the pleadings. On June 12, 2007, the Board filed a motion to dismiss Hill's second amended complaint, which the court granted on July 12. This appeal followed.

Before considering Hill's arguments on their merits, we must address the Board's contention that *laches* bars Hill's claims with respect to all but the most recent parole hearing. *Laches* is an equitable doctrine that bars a party from bringing a claim if the opposing party can show that (1) the party bringing the claim delayed unreasonably and (2) the delay prejudiced the opposing party. *Hynes v. Snyder*, 355 Ill. App. 3d 394, 398, 823 N.E.2d 231, 235 (2005). The Board argues that it would be impossible to find all the members who had served on the Prisoner Review Board and had participated in Hill's parole hearings from 1983 through 2002. Thus, the Board argues, it would suffer actual prejudice if these claims were allowed to go forward. We note that the Board does not contend that *laches* bars any claims related to the January 2006 hearing and February 2006 decision to deny parole.

In light of the nature of the relief sought, we do not find it necessary to resolve this question. Hill has requested a declaration that the procedures he alleges the Board has

5

followed (such as scheduling his parole hearings for intervals longer than a year and using "reinterpreted" criteria) violate various constitutional provisions. Although he phrases his request in terms of past allegations, as a practical matter, were the trial court to grant the relief Hill seeks and make a declaratory ruling, the ruling would only serve to outline how the Board must proceed in future parole hearings. There is no other effective relief that can be granted. Hill also seeks a writ of *mandamus* directing the Board to conduct future hearings in a certain manner. Thus, we find that this issue is moot. We now turn our attention to Hill's contentions.

Hill's first argument is that as a factor in denying him parole the Board improperly considered the fact that he had been initially sentenced to death. This argument appears to be threefold. First, Hill contends that because the death sentence was imposed pursuant to a statute that had not yet been enacted at the time he killed the two pharmacists, any consideration of that sentence as a factor in denying him parole contravenes the *ex post facto* clauses of the federal and state constitutions. Second, he argues that mention of the previously imposed death sentence is insufficient to support the Board's rationale in denying him parole. See *Tiller v. Klincar*, 138 Ill. 2d 1, 14-15, 561 N.E.2d 576, 581-82 (1990) (declining to decide whether an inmate has a constitutionally protected interest in parole release and finding that the Board's determination that granting parole would deprecate the seriousness of the offense was sufficient to satisfy due process, assuming that this interest exists), *overruled on other grounds by Fletcher v. Williams*, 179 Ill. 2d 225, 236, 688 N.E.2d 635, 641 (1997). Third, he argues that the Board's decision to focus on the death sentence caused it to overlook his rehabilitative efforts.

We need not consider these arguments in detail. The allegation that the Board considered Hill's overturned death sentence as a factor in denying parole is speculative and contradicted by the record. Although the death sentence was mentioned in each of the

6

decisions to deny parole, it appeared each time in a paragraph outlining the procedural background of the case. Moreover, in each decision, the Board expressly stated that it was denying parole because it found that granting parole would deprecate the seriousness of the offense. This rationale, standing alone, is sufficient to deny parole. See *Tiller*, 138 Ill. 2d at 15, 561 N.E.2d at 582. We also note that the Board appears to have considered substantial evidence that Hill made rehabilitative efforts. Decisions outline Hill's educational achievements, successful completion of an anger-management class, and commendations for assisting injured inmates.

Hill next contends that the Board reinterpreted the statutory criteria for parole at some point after he had been sentenced in 1980. As previously mentioned, he supports this contention with allegations that the percentage of inmates convicted of murder who were granted parole dropped from more than 50% to just 10%. He contends that this change violates the *ex post facto* clauses of the state and federal constitutions. We disagree.

Both the United States Constitution and the Illinois Constitution prohibit the enactment of *ex post facto* laws. *Fletcher v. Williams*, 179 Ill. 2d 225, 229, 688 N.E.2d 635, 638 (1997) (citing U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16). A law that increases the punishment for a crime retroactively is an *ex post facto* law. *Garner v. Jones*, 529 U.S. 244, 249, 146 L. Ed. 2d 236, 244, 120 S. Ct. 1362, 1367 (2000). Retroactive changes to parole procedures can violate these provisions even though the decision to grant or deny parole is a matter of discretion. *Garner*, 529 U.S. at 250, 146 L. Ed. 2d at 244, 120 S. Ct. at 1367; *Fletcher*, 179 Ill. 2d at 230, 688 N.E.2d at 638. The question is whether the change creates " 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.' " *Garner*, 529 U.S. at 250, 146 L. Ed. 2d at 244, 120 S. Ct. at 1367 (quoting *California Department of Corrections v. Morales*, 514 U.S. 499, 509, 131 L. Ed. 2d 588, 597, 115 S. Ct. 1597, 1603 (1995)).

7

Hill contends that the Board's "reinterpretation" of "the seriousness of the offense" criterion decreased the likelihood he would be paroled, thereby increasing the length of time he would likely spend in prison. In support of this position, he cites *Ganci v. Washington*, 318 Ill. App. 3d 1174, 745 N.E.2d 42 (2001). There, much as in this case, an inmate argued that the Board increased his sentence by denying his requests for parole based on factors not in existence when he committed his crimes in the 1970s. *Ganci*, 318 Ill. App. 3d at 1177, 745 N.E.2d at 44. The inmate alleged that there was an informal decision to change the criteria used to determine whether an inmate is suitable for parole. *Ganci*, 318 Ill. App. 3d at 1185, 745 N.E.2d at 50.

In finding that his complaint was sufficient to withstand a motion to dismiss, the Fourth District noted that all well-pled facts in a complaint are to be taken as true. *Ganci*, 318 Ill. App. 3d at 1188, 745 N.E.2d at 52. The court further noted that the inmate had alleged that, in response to urging by former Governor Thompson and former Cook County State's Attorney Richard Daley, the Prisoner Review Board changed the criteria it used to evaluate convicted murderers. *Ganci*, 318 Ill. App. 3d at 1187-88, 745 N.E.2d at 52. The inmate further alleged that these new criteria treated convicted murderers differently from other inmates who became eligible for parole. He also cited essentially the same statistical changes in parole rates that Hill cites here. *Ganci*, 318 Ill. App. 3d at 1188, 745 N.E.2d at 52. The court found that these allegations were sufficient to survive a motion to dismiss, particularly in light of the fact that discovery had yet to be conducted. *Ganci*, 318 Ill. App. 3d at 1187, 745 N.E.2d at 51.

The Board acknowledges that *Ganci* supports Hill's position. However, the Board argues that the case was wrongly decided. We agree. We find that the Fourth District's reasoning in *Ganci* directly contravenes the United States Supreme Court's statements in *Garner*. Illinois courts look to the United States Supreme Court's interpretation of the

8

federal *ex post facto* clause when we interpret our state *ex post facto* clause. *Fletcher*, 179 Ill. 2d at 229, 688 N.E.2d at 638. The *Garner* Court was careful to distinguish between two types of *ex post facto* claims related to parole: (1) claims that a state retroactively enacted parole procedures that might have the effect of preventing or delaying the parole board from exercising its discretion at all and (2) claims that the parole board changed the way it exercised its discretion. *Garner*, 529 U.S. at 254, 146 L. Ed. 2d at 246-47, 120 S. Ct. at 1369. The Court explained that at the heart of the *ex post facto* doctrine is the notion that a criminal defendant should have some actual or constructive notice of the penalty for a crime even before the crime is committed. *Garner*, 529 U.S. at 253, 146 L. Ed. 2d at 246, 120 S. Ct. at 1369. In finding that changes in the way a parole board exercises its discretion do not run afoul of this principle, the Court went on to explain as follows:

"[W]here parole is concerned[,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism ***, along with a complex of other factors, will inform parole decisions." *Garner*, 529 U.S. at 253, 146 L. Ed. 2d at 246, 120 S. Ct. at 1369.

We acknowledge that these statements are *dicta*. The *Garner* Court was not called upon to consider a claim that a change in the way a parole board exercised its discretion violated the *ex post facto* clause. Nevertheless, the statements go to the heart of what the *ex post facto* clause is meant to protect. Given the very broad discretion vested in the Prisoner Review Board, a criminal defendant has notice that the Board may change the way it exercises its discretion over time. The trial court correctly found that Hill's complaint failed to state a claim on this issue.

Hill next argues that this alleged change in the criteria used by the Board to evaluate

9

prisoners' suitability for parole violates the separation-of-powers clause (Ill. Const. 1970, art. II, §1). This is because he alleged that the change was made by the former Governor and a former State's Attorney, members of the executive branch, rather than by the legislature. We first note what Hill does *not* argue: he does not argue that the Board promulgated a new rule or that the State passed a new statute; he only asserts that the Board changed the way it applied already existing criteria for parole. He alleges that this change came in response to statements by former Governor Thompson and former Cook County State's Attorney Daley that too many murderers were serving too little time in prison. These allegations fall well short of stating a claim for a violation of the separation-of-powers doctrine.

As previously discussed, the Board enjoys nearly complete discretion in determining whether to grant or deny parole. *Hanrahan v. Williams*, 174 Ill. 2d 268, 276, 673 N.E.2d 251, 255 (1996). There are some statutory guidelines. Specifically, the Board cannot grant parole if it determines that there is a substantial risk the inmate will not comply with the conditions of parole, the inmate's release "would deprecate the seriousness of his offense or promote disrespect for the law," or the inmate's release would have an adverse effect on institutional discipline. 730 ILCS 5/3-3-5(c) (West 2004). However, these statutory criteria are not meant to be an exclusive list. The Board has the discretion to consider additional factors it deems relevant. *Hanrahan*, 174 Ill. 2d at 275, 673 N.E.2d at 255. Moreover, as previously discussed, inherent in the nature of parole is the notion that the way the Board exercises its judgment with respect to these criteria will change over time. We conclude that Hill failed to allege a separation-of-powers violation.

Hill next argues that the statutory change permitting the Board to schedule his parole hearings more than one year apart is a violation of *ex post facto* principles. The version of the relevant statute currently in effect provides that if the Board denies parole, it must set the inmate's next hearing within one year with one exception: the Board may set the inmate's next

10

parole hearing at an interval of up to three years if the Board expressly finds that it is not reasonable to expect that parole would be granted sooner than the date on which it sets the hearing. 730 ILCS 5/3-3-5(f) (West 2004). Prior to 1988, the statute required parole hearings to be set annually, without this exception. *Fletcher*, 179 Ill. 2d at 231, 688 N.E.2d at 639 (citing Ill. Rev. Stat. 1975, ch. 38, par. 1003-3-5(f)). In support of his argument that this change is an *ex post facto* law, Hill cites *Tiller v. Klincar*, 138 Ill. 2d 1, 561 N.E.2d 576 (1990). That case held that the statutory change here at issue was a violation of *ex post facto* principles. However, the Illinois Supreme Court subsequently recognized that the United States Supreme Court's decision in *California Department of Corrections v. Morales* had overruled that holding. *Fletcher*, 179 Ill. 2d at 236, 688 N.E.2d at 641; *California Department of Corrections v. Morales*, 514 U.S. 499, 131 L. Ed. 2d 588, 115 S. Ct. 1597 (1995).

The *Fletcher* court explained that, under *Morales*, a statutory change that increases the time between parole hearings violates the *ex post facto* clauses only if " 'it produces a sufficient risk of increasing the measure of punishment' " that is more than a " 'speculative and attenuated possibility.' " *Fletcher*, 179 Ill. 2d at 234-35, 688 N.E.2d at 641 (quoting *Morales*, 514 U.S. at 509, 131 L. Ed. 2d at 597, 115 S. Ct. at 1603). In applying that principle to the statutory change at issue here, the *Fletcher* court noted that the Board can only schedule an inmate's next parole hearing more than one year after the previous hearing if it finds that it is unlikely that it would grant parole any sooner. *Fletcher*, 179 Ill. 2d at 237, 688 N.E.2d at 642. It also gives the Board discretion to set the next parole hearing for any time between one and three years after the previous hearing, thus allowing the Board to consider the individual circumstances of the specific inmate involved. *Fletcher*, 179 Ill. 2d at 237-38, 688 N.E.2d at 642. In addition, a regulation permits Illinois inmates to request a parole hearing at any time based on circumstances that were not known to the inmate at

11

the time of his last parole hearing or that have arisen since the last hearing. *Fletcher*, 179 Ill. 2d at 238, 688 N.E.2d at 642 (citing 20 Ill. Adm. Code §1610.100(a)(2) (1996)). The *Fletcher* court concluded that with these "ameliorating characteristics," the statutory amendment permitting three-year intervals between parole hearings did not pose a sufficient risk of increasing the prison term of *any* Illinois inmate. *Fletcher*, 179 Ill. 2d at 238, 688 N.E.2d at 642.

As the Board acknowledges, the breadth of this holding might have been called into question when the United States Supreme Court revisited its *Morales* decision in *Garner*. The California amendment at issue in *Morales* was nearly identical to the one the Illinois Supreme Court considered in *Fletcher*, with one exception–the amendment in *Morales* applied only to inmates convicted of multiple murders, while the amendment involved here and in *Fletcher* is applicable to all Illinois inmates eligible to be considered for parole. *Fletcher*, 179 Ill. 2d at 236-37, 688 N.E.2d at 641. In *Fletcher*, the Illinois Supreme Court found this distinction constitutionally insignificant. *Fletcher*, 179 Ill. 2d at 237, 688 N.E.2d at 641. In *Garner*, however, the United States Supreme Court indicated that where a rule change has broader application, it is necessary for courts to consider whether an inmate challenging an amendment has shown that the amendment, as applied to his sentence, creates a significant risk of increasing the punishment of that inmate. *Garner*, 529 U.S. at 255, 146 L. Ed. 2d at 247, 120 S. Ct. at 1370.

In *Garner*, the Court considered the retroactive application of a Georgia law extending the maximum period between parole hearings from three years to eight years. *Garner*, 529 U.S. at 247, 146 L. Ed. 2d at 242, 120 S. Ct. at 1365-66. The amendment applied to any inmate serving a life sentence. *Garner*, 529 U.S. at 247, 146 L. Ed. 2d at 242, 120 S. Ct. at 1366. Like the amendments involved in *Morales* and *Fletcher*, the Georgia parole board had the discretion to schedule parole hearings sooner than eight years. *Garner*, 529 U.S. at 248,

146 L. Ed. 2d at 243, 120 S. Ct. at 1366. Unlike those amendments, the Georgia amendment did not require the parole board to make any particular findings about the reasonable probability of parole before it was permitted to schedule parole hearings at eight-year intervals. *Garner*, 529 U.S. at 249, 146 L. Ed. 2d at 243, 120 S. Ct. at 1367. However, the board's stated policy was to set parole hearings at eight-year intervals only if it determined that it was unlikely to grant parole to a particular inmate earlier. *Garner*, 529 U.S. at 254, 146 L. Ed. 2d at 247, 120 S. Ct. at 1369-70.

On appeal, the Supreme Court noted that it was extremely unlikely that the inmate challenging the amendment would have been paroled earlier if not for the amendment; he committed a second murder after escaping from prison. *Garner*, 529 U.S. at 254-55, 146 L. Ed. 2d at 247, 120 S. Ct. at 1370. The Court nevertheless found it necessary to remand for further proceedings, and it directed the circuit court of appeals to consider the practical impact of the statutory amendment on the particular inmate challenging it. *Garner*, 529 U.S. at 256-57, 146 L. Ed. 2d at 248, 120 S. Ct. at 1370-71.

The Court found this necessary for two reasons. First, the Court explained that because the statutory amendment at issue in *Morales* applied only to inmates serving sentences for multiple murders, the Court's analysis there could "proceed[] on the assumption that there were no relevant differences between inmates." *Garner*, 529 U.S. at 255, 146 L. Ed. 2d at 247, 120 S. Ct. at 1370. The Georgia law, applicable to any inmate serving a life sentence, was much broader. Second, a federal appeals court had found that the Georgia parole board's internal policy of scheduling parole hearings at longer intervals only after finding earlier parole unlikely was insufficient for *ex post facto* purposes. The appeals court reasoned that this policy, unlike a statutory requirement, was not enforceable. *Garner*, 529 U.S. at 249, 146 L. Ed. 2d at 243, 120 S. Ct. at 1367. The Supreme Court found that the inmate's *ex post facto* claim could only be evaluated with a consideration of the board's

13

policy coupled with evidence of how it actually applied that policy. *Garner*, 529 U.S. at 256, 146 L. Ed. 2d at 248, 120 S. Ct. at 1370-71.

It is not entirely clear whether, in light of *Garner*, it is necessary to evaluate Hill's individual circumstances. On one hand, the statutory amendment involved here applies to a broader class of inmates than either the Georgia law or the California law considered by the Supreme Court in *Garner* and *Morales*. On the other hand, however, our statute does specifically require the Board to find that it is not reasonably likely an inmate would be paroled earlier before scheduling a parole hearing more than one year from the last parole hearing. In addition, eight years is obviously a far longer interval than three years; thus, more can change during eight years than three.

Assuming that *Garner* dictates further consideration of Hill's individual claim, we find that the allegations of his complaint do not demonstrate any substantial risk that he will be subjected to increased penalties because of the amendment. As previously explained, the Board can schedule subsequent parole hearings more than one year after the previous hearing only if it expressly finds that it would not be reasonable to expect parole to be granted any earlier. The record demonstrates that the Board has in fact taken into consideration his individual circumstances in scheduling his parole hearings. Several parole hearings were scheduled annually for him after the amendment. Moreover, if circumstances arise that might warrant earlier consideration, Hill can petition for an earlier parole hearing. In addition, Hill is precisely the type of inmate whose circumstances the Supreme Court found unlikely to be impacted by lengthier intervals between parole hearings–that is, he was convicted of two murders. In light of all of these circumstances, we find that the complaint fails to allege facts demonstrating that the time Hill serves in prison is likely to be impacted by the statutory change.

Finally, Hill argues that his complaint states a claim because the Board violated his

right to minimal procedural due process by relying on disciplinary reports he contends were the result of a Department of Corrections official who was not impartial. We first note that no Illinois court has yet held that a prisoner has any protected liberty interest in parole. See *Tiller*, 138 Ill. 2d at 13-14, 561 N.E.2d at 581 (explaining that procedural due process concerns are only raised if a protected liberty interest exists). Moreover, it appears that the Board's primary focus was not on these disciplinary infractions, but on the seriousness of the crimes he committed. We also note that his allegations of bias on the part of the official are conclusory.

For the reasons stated, we affirm the order of the trial court dismissing Hill's second amended complaint.


Affirmed.


WEXSTTEN and STEWART, JJ., concur.

NO. 5-07-0426

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

<table>
<tr><td>WILLIAM R. HILL,</td><td>) Appeal from the<br>) Circuit Court of</td></tr>
<tr><td>    Plaintiff-Appellant,</td><td>) Alexander County.<br>)</td></tr>
<tr><td>v.</td><td>) No. 06-MR-29<br>)</td></tr>
<tr><td>ROGER E. WALKER, JR., Director of Corrections,<br>and JORGE MONTES, Chairman, Illinois Prisoner<br>Review Board,</td><td>)<br>)<br>) Honorable<br>) Mark H. Clarke,</td></tr>
<tr><td>    Defendants-Appellees.</td><td>) Judge, presiding.</td></tr>
</table>

**Opinion Filed**:        February 24, 2010

**Justices**:        Honorable Melissa A. Chapman, J.

                    Honorable James M. Wexstten, J., and
                    Honorable Bruce D. Stewart, J.,
                    Concur

**Attorney
for
Appellant
*Pro se***        William R. Hill; Reg. No.: C-73746, Menard Correctional Center, P.O. Box 711,
Menard, IL 62259

**Attorneys
for
Appellees**        Lisa Madigan, Attorney General, State of Illinois, Michael A. Scodro, Solicitor
General, Timothy K. McPike, Assistant Attorney General, 100 West Randolph Street,
12th Floor, Chicago, IL 60601