Docket No. 110215.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

WILLIAM R. HILL, Appellant, v. ROGER E. WALKER, JR.,
Director of Corrections, *et al.*, Appellees.

*Opinion filed March 24, 2011.*

JUSTICE FREEMAN delivered the judgment of the court, with
opinion.
Chief Justice Kilbride and Justices Thomas, Garman, Karmeier,
Burke, and Theis concurred in the judgment and opinion.

**OPINION**

Plaintiff, William R. Hill, an inmate at Tamms Correctional Center,
brought an action in the circuit court of Alexander County seeking
declaratory and *mandamus* relief against defendants, Roger E.
Walker, Jr., Director of Corrections, and the members of the Illinois
Prisoner Review Board (Board). The circuit court dismissed plaintiff's
second amended complaint pursuant to section 2–615 of the Code of
Civil Procedure (735 ILCS 5/2–615 (West 2006)). The appellate
court upheld the dismissal. 397 Ill. App. 3d 1090. We allowed
plaintiff's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Feb.
26, 2010)), and now affirm the judgment of the appellate court.

## I. BACKGROUND

Hill was hired to kill Robert Fields. In August 1974, Hill fatally shot Allen Zipperstein, whom Hill mistook for Fields. In January 1975, Hill fatally shot Fields. Following a jury trial in the circuit court of Cook County, Hill was convicted of two counts of murder and, at the close of a separate sentencing hearing before the same jury, the court sentenced Hill to death. *People v. Hill*, 78 Ill. 2d 465, 467 (1980) (citing Ill. Rev. Stat. 1977, ch. 38, par. 9–1). On direct review, this court held that the circuit court erred by admitting into evidence inculpatory statements that Hill had made during plea negotiations, and further held that the error was so prejudicial as to require reversal of Hill's convictions. *Hill*, 78 Ill. 2d at 469-74. This court also held that, if Hill were convicted of murder on remand, he could not be sentenced to death because he committed the crimes prior to the enactment of the then-existing death penalty statute. *Id.* at 474-76.

On remand, Hill pled guilty to two counts of murder and was sentenced in 1981 to two concurrent prison terms of 30 to 90 years. Under the then-existing sentencing laws, Hill became eligible for parole in 1983. The Board held parole hearings for Hill in May 1983, March 1984, January 1985, April 1986, and April 1987. At the close of each hearing, the Board denied parole based on the seriousness of the offenses.

Effective January 1988, the legislature amended the law governing parole. As amended, the statute allows the Board to set parole hearings as much as three years apart, so long as the Board finds that it is not reasonably likely to grant parole prior to that time. See Ill. Rev. Stat. 1987, ch. 38, par. 1003–3–5(f). Subsequent to this amendment, the Board held parole hearings for Hill in February 1988, February 1991, February 1992, May 1993, May 1994, May 1995, May 1996, November 1997, November 1998, October 1999, December 2002, and January 2006. The Board denied parole each time based primarily on the seriousness of the offenses. In the 2002 and 2006 decisions, the Board additionally noted several prison disciplinary infractions that had occurred in 2000.

On December 8, 2006, Hill, *pro se*, filed his second-amended complaint for declaratory and *mandamus* relief. Hill claimed that the parole process, as applied by the Board to him, was unconstitutional because it violated both procedural due process and the prohibition

against *ex post facto* laws. Hill sought a declaration to that effect and a writ of *mandamus* ordering the Board to provide Hill with parole hearings in accordance with the statutory and regulatory criteria in effect when he committed the murders. The circuit court granted the State's motion to dismiss. The appellate court affirmed. 397 Ill. App. 3d 1090. We subsequently allowed Hill's *pro se* petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)), and appointed counsel to represent him during these proceedings.

## II. ANALYSIS

Hill argues that the circuit court erred in dismissing his causes of action. Reviewing *de novo* the circuit court's dismissal (*Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009)), we hold that the circuit court did not err.

## A. Due Process

Hill claims that two procedural defects in his parole hearings deprived him of due process of law. First, Hill noted that in all but three of its many decisions denying parole, the Board referenced Hill's original death sentence. Hill alleged that the Board continued to consider his initial death sentence in determining his eligibility for parole, although this court overturned it. See *Hill*, 78 Ill. 2d at 474-76. Second, Hill alleged that the Board considered prison disciplinary infractions that had occurred in 2000 in denying parole in 2002 and 2006. Hill alleged that these infractions were based on false accusations made by a biased Department of Corrections official who was himself under the influence of drugs. Hill contends that the Board's consideration of these two pieces of information rendered his parole hearings fundamentally unfair.

We reject these contentions. The due process clauses of the federal and Illinois Constitutions protect against the deprivation of liberty or property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2. Procedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake, to which a person has a legitimate claim of entitlement. *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979) (quoting *Board of*

-3-

*Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71, 577 (1972)). " 'Therefore, the starting point in any procedural due process analysis is a determination of whether one of those protectable interests is present, for if there is not, no process is due.' " *Wilson v. Bishop*, 82 Ill. 2d 364, 368 (1980) (quoting *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287, 293-94 (1979)).

There is no constitutional or inherent right of a convicted person to be conditionally released from confinement prior to the expiration of a valid sentence. The natural desire of an individual to be released is no different from the initial resistance to being confined. However, the conviction, with all of its procedural safeguards, has extinguished that liberty right. A valid conviction *constitutionally* deprives a criminal defendant of his or her liberty. *Greenholtz*, 442 U.S. at 7; see *Thompson v. Veach*, 501 F.3d 832, 835-36 (7th Cir. 2007); *Heidelberg v. Illinois Prisoner Review Board*, 163 F.3d 1025, 1026 (7th Cir. 1998). However, a state may create a protected liberty interest in parole through its statutes and regulations governing the parole decisionmaking process. See *Greenholtz*, 442 U.S. at 12; *Thompson*, 501 F.3d at 836. A state creates this liberty interest if its parole system *requires release* whenever the parole authority determines that the necessary prerequisites exist. See *Board of Pardons v. Allen*, 482 U.S. 369, 376 (1987); *Heidelberg*, 163 F.3d at 1026.

Before this court, Hill argues that "a person is entitled to due process protection against 'arbitrary action' in parole revocation hearings," citing the partial dissent in *Morrissey v. Brewer*, 408 U.S. 471, 499 (1972) (Douglas, J., dissenting in part). However, in *Greenholtz*, the United States Supreme Court distinguished *Morrissey* based on the context of parole *revocation*, at issue in *Morrissey*, and parole *release*, at issue in *Greenholtz* and the present case. "There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz*, 442 U.S. at 9. As the United States Court of Appeals for the Seventh Circuit explained, in a procedural due process analysis, "the framework of *Greenholtz* (and our holding in *Heidelberg*) distinguishes between discretionary parole systems and those that establish legitimate claims of entitlement based on specific criteria." *Grennier v. Frank*, 453 F.3d 442, 446 (7th Cir. 2006).

In Illinois, this court has consistently held that parole is not a right (*Hanrahan v. Williams*, 174 Ill. 2d 268, 276 (1996)), but a matter of grace and executive clemency. *People v. Hawkins*, 54 Ill. 2d 247, 252 (1973); *People ex rel. Jones v. Brantley*, 45 Ill. 2d 335, 337-38 (1970); *People ex rel. Castle v. Spivey*, 10 Ill. 2d 586, 594 (1957). The Board is an administrative agency created by the legislature. *Hanrahan*, 174 Ill. 2d at 274. One of the Board's duties is to determine whether an eligible inmate should be granted or denied parole. 730 ILCS 5/3–3–1(a)(1), 3–3–2(a)(1), (a)(2) (West 2006). The legislature has set forth criteria under which the Board *must deny* parole:

> "(c) The Board shall not parole a person eligible for parole if it determines that:
>
> > (1) there is a substantial risk that he will not conform to reasonable conditions of parole; or
> >
> > (2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or
> >
> > (3) his release would have a substantially adverse effect on institutional discipline." 730 ILCS 5/3–3–5(c) (West 2006).

Further, the legislature has authorized the Board to promulgate its own rules regarding the conduct of its work and the exercise of its discretion in making parole determinations. 730 ILCS 5/3–3–2(d), 3–3–5(h) (West 2006). According to its rules, "[t]he Board grants parole as an exercise of grace and executive discretion as limited or defined by *** legislation," and the Board's "parole release decision is a subjective determination based on available relevant information." 20 Ill. Adm. Code §§1610.50(a), (b). Although the rules provide lists of factors that the Board may consider in determining to grant or deny parole, the rules expressly provide that the parole decision is not limited to the consideration of only the listed factors. 20 Ill. Adm. Code §1610.50(b).

In *Hanrahan*, this court explained that the parole statute provides criteria under which the Board must deny parole, and does not provide when the Board must grant parole. Further, the rules expressly provide that parole is granted as a matter of executive

discretion and grace, based on available relevant information. *Hanrahan*, 174 Ill. 2d at 276. This court concluded:

> "We believe that Illinois' statutory criteria and the Board's rules do not provide standards for release on parole sufficiently objective to allow a court to evaluate the Board's decision to deny parole. We thus conclude that the legislature, in drafting the statutory language, intended the Board to have complete discretion in determining whether to grant parole when the denial of parole is not mandated by statute." *Hanrahan*, 174 Ill. 2d at 276.

We now conclude that the Illinois parole statute does not create a legitimate expectation of parole that rises to the level of a liberty interest protected by procedural due process. See *Heidelberg*, 163 F.3d at 1027. Accordingly, the circuit court did not err in dismissing this claim.

## B. *Ex Post Facto*

Hill claims two violations of the prohibition against *ex post facto* laws. Both the federal and Illinois Constitutions prohibit the General Assembly from enacting *ex post facto* laws. U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16. This court, in interpreting the *ex post facto* prohibition in the Illinois Constitution, looks to the United States Supreme Court's interpretation of the *ex post facto* clause of the United States Constitution. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 209 (2009); *Barger v. Peters*, 163 Ill. 2d 357, 360 (1994). The *ex post facto* clauses prohibit laws that " 'retroactively alter the definition of crimes or increase the punishment for criminal acts.' " *California Department of Corrections v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)); see *People v. Cornelius*, 213 Ill. 2d 178, 207 (2004) (citing *Lynce v. Mathis*, 519 U.S. 433, 439-41 (1997)). Retroactive changes in laws governing parole may, in some circumstances, violate the *ex post facto* prohibition. *Garner v. Jones*, 529 U.S. 244, 250 (2000).

### 1. *Changed Discretionary Standard*

In the present case, Hill contends that, after he committed the murders, the Board changed its interpretation of the "seriousness of

the offense" criterion (see 730 ILCS 5/3–3–5(c)(2) (West 2006)) to require murderers to serve more prison time before granting them parole. Hill argues that the Board's retroactive change to this standard for granting parole constitutes a violation of the *ex post facto* prohibition. We disagree.

Although we earlier explained that the Board is vested with complete discretion in granting parole, this does not end our analysis. The United States Supreme Court has cautioned: "The presence of discretion does not displace the protections of the *Ex Post Facto* Clause, however. [Citation.] The danger that legislatures might disfavor certain persons after the fact is present even in the parole context, and the Court has stated that the *Ex Post Facto* Clause guards against such abuse." *Garner*, 529 U.S. at 253; see *Fletcher v. Williams*, 179 Ill. 2d 225, 229-30 (1997). Hill relies on *Ganci v. Washington*, 318 Ill. App. 3d 1174 (2001), in which the plaintiff made the same claim of *ex post facto* parole standards as does Hill, and whose complaint was likewise dismissed for failure to state a cause of action. However, citing the above-quoted caution from *Garner* (*id*. at 1186), the appellate court reversed the dismissal and remanded the cause for discovery on the claim. *Id*. at 1185-88.

Despite the Court's cautionary note in *Garner*, that case nevertheless involved an amended parole board *rule*. *Garner*, 529 U.S. at 247. In the present case, however, Hill failed to allege that the Board based its latest denial of parole on a new or amended statute or rule. Rather, he alleged only that the Board is exercising its discretion more stringently. In *Grennier*, the Seventh Circuit Court of Appeals recognized this crucial distinction in a case involving a Wisconsin inmate who made nearly the same *ex post facto* argument as Hill. The court rejected the inmate's argument as follows:

> "Defendants allow that Wisconsin has become less willing to release persons convicted of serious offenses and now demands assurance that interests in deterrence, desert, and public safety have been satisfied before a murderer will be let free. Neither the ex post facto clause nor the due process clause has anything to say about how discretion will be exercised under an open-ended system, however. [Citation.] Grennier has no more entitlement to a liberal release policy than he would have had to be sentenced by a judge who

favored home confinement over prison. The constitutional interest is in the rules and statutes–the 'laws' to which it refers–rather than the attitudes of public officials who administer a discretionary system." *Grennier*, 453 F.3d at 445.

Although *Grennier* is not binding on this court (see *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977)), we believe that the Seventh Circuit's analysis is more faithful to the Supreme Court's holding in *Garner* than our appellate court's analysis in *Ganci*. As the Court in *Garner* recognized:

> "[W]here parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions." *Garner*, 529 U.S. at 253.

We agree and therefore overrule *Ganci*.

Hill does not allege a retroactive change in a parole statute or rule, but rather only a change in how the Board exercises its discretion. This does not violate the prohibition against *ex post facto* laws. Accordingly, this claim does not state a cause of action.


### 2. *Reduced Frequency of Parole Hearings*

Hill's second alleged violation of the *ex post facto* clauses of the federal and Illinois Constitutions *does* involve a "law." Specifically, Hill notes that at the time he committed the murders section 3–3–5(f) of the Unified Code of Corrections entitled him to annual parole hearings. Hill maintains that amendments to the statute over the years retroactively applied to him and that these retroactive laws imposed upon him a more onerous punishment than was in place when he committed the murders in 1974 and 1975. We disagree.

Section 3–3–5 of the Unified Code of Corrections provides for the hearing and evaluation of prisoners under consideration for parole. Subsection (f) governs the frequency with which parole hearings must be granted. 730 ILCS 5/3–3–5(f) (West 2006). At the time Hill committed the murders, the statute provided in pertinent part that "if

[the Board] denies parole it shall provide for a rehearing not more than 12 months from the date of denial." Ill. Rev. Stat. 1973, ch. 38, par. 1003–3–5(f). Section 3–3–5(f) was amended several times, in 1981, 1983, and 1988.[1] The provision has provided since 1996 in relevant part:

> "[I]f [the Board] denies parole it shall provide for a rehearing not less frequently than once every year, except that the Board may, after denying parole, schedule a rehearing no later than 3 years from the date of the parole denial, if the Board finds that it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." 730 ILCS 5/3–3–5(f) (West 2006).

Hill argues that the amendments cannot constitutionally apply to him and that he is entitled to the annual parole hearings from the statute in effect at the time he committed the murders.

Hill is not the first inmate to so argue. This court, in *People v.*

---

[1]In 1981, the provision read in pertinent part:

> "In its decision, the Board shall set the person's time for parole, or if it denies parole it shall provide for a rehearing not more than 12 months from the date of denial, however, the Board, on its own motion, may provide for a rehearing for an individual more frequently than once every 12 months or less frequently than once every 12 months but no less frequently than once every 3 years." Ill. Rev. Stat. 1981, ch. 38, par. 1003–3–5(f).

In 1983, the section provided in pertinent part: "[I]f [the Board] denies parole it shall provide for a rehearing not less frequently than once every 3 years." Ill. Rev. Stat. 1983, ch. 38, par. 1003–3–5(f). By 1988, the provision provided in pertinent part:

> "[I]f [the Board] denies parole it shall provide for a rehearing not less frequently than once every 3 years. The Board may, after denying parole to a person originally sentenced or who became eligible for parole between January 1, 1973 and September 30, 1977, schedule a rehearing no later than 3 years from the date of the parole denial, if the Board finds that it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." Ill. Rev. Stat. 1989, ch. 38, par. 1003–3–5(f).

*Fletcher*, 179 Ill. 2d 225 (1997), addressed a virtually identical argument concerning the effect of these amendments on parole hearings. In *Fletcher*, the plaintiffs contended that section 3–3–5(f) violated the *ex post facto* clauses because at the time they committed their various crimes, the section provided for annual parole hearings, but was subsequently amended to permit the Board to schedule parole hearings up to three years apart. We rejected this contention, relying on the United States Supreme Court's decision in *Morales*. We explained that under *Morales*:

> "[A] statute that decreases the frequency of parole hearings will violate the *ex post facto* prohibition only when 'it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.' This inquiry cannot be embraced within a formula or stated in a general proposition, but rather is a matter of degree. However, where the legislative adjustment creates only a 'speculative and attenuated possibility' of increasing punishment, it cannot be considered *ex post facto*. *Morales*, 514 U.S. at 509, 131 L. Ed. 2d at 596, 115 S. Ct. at 1602." *Fletcher*, 179 Ill. 2d at 234-35.

We therefore concluded that, under *Morales*, the relevant inquiry is whether the section produced a sufficient risk of increasing the measure of punishment. *Fletcher*, 179 Ill. 2d at 236 (citing *Morales*, 514 U.S. at 509).

In holding that section 3–3–5(f) did not produce a sufficient risk of increasing the measure of punishment, we identified several characteristics of the section that ameliorate against an increase of punishment. First, the statute itself is tailored to the determination of the likelihood that a prisoner would be released sooner than an extended parole hearing date. Second, the Board retains the authority to tailor the frequency of subsequent parole hearings to the particular circumstances of the individual prisoner. Third, the prisoner may seek a parole hearing at anytime based on new facts or extraordinary circumstances. *Fletcher*, 179 Ill. 2d at 237-38 (citing *Morales*, 514 U.S. at 511-13). We therefore concluded that amended section 3–3–5(f) of the Unified Code of Corrections is not an *ex post facto* law.

Notwithstanding the above, Hill contends that in *Garner*, which

postdates *Fletcher*, the Court "called the breadth of *Morales* into question." Hill cites to a passage in *Garner* where the Court explains that when an amended statute or rule does not facially show a significant risk of increased punishment, a prisoner "must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 255. Based on this language, Hill contends that an *ex post facto* claim *always* requires a "fact intensive review" and the admission of evidence. Thus, according to Hill, when this court in *Fletcher* determined whether section 3–3–5(f) created a significant risk of increased punishment, the court should have considered evidence regarding how the Board actually interpreted the statute. Hill invites us to reconsider *Fletcher* in light of *Garner*.

We decline Hill's invitation because *Garner* does not change the reasoning or result in *Fletcher*. We earlier recited the statutory evolution of section 3–3–5(f) from the time Hill committed the murders to the present day. The Court in *Garner* noted its observation in *Morales* that "the *Ex Post Facto* Clause should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.' [*Morales*, 514 U.S. at 508.] These remain important concerns. The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Garner*, 529 U.S. at 252. The amendments to section 3–3–5(f) represent the legislature's best efforts, in the exercise of its discretion, to fulfill its obligation to change and adapt parole laws based on experience. See *id.* at 253.

Further, Hill overstates the Court's holding in *Garner*, which does *not* require a "fact intensive review" in every *ex post facto* claim. Indeed, the passage from *Garner*, upon which Hill relies, ends with the observation that "the general operation of the Georgia parole system may produce relevant evidence and inform further analysis on the point." *Garner*, 529 U.S. at 255. *Garner* involved that parole board's nonbinding policy statement as to how it would enforce a rule. The lower court in that case failed to consider the effect thereof in its analysis. *Id.* at 256-57. "Finding that the record was insufficient to show whether the change in parole law would lengthen the inmate's

-11-

actual time in prison, the Court remanded the case for a determination of fact as to whether the new rule created a significant risk of increased punishment. *Id.* at 256, 120 S. Ct. 1362." *Glascoe v. Bezy*, 421 F.3d 543, 547 (7th Cir. 2005) (explaining *Garner*).

In the present case, unlike in *Garner*, there is no question that section 3–3–5(f) on its face, or in its operation pursuant to its binding regulation (see 20 Ill. Adm. Code §1610.100(a)(2)), does not create a significant risk of increasing Hill's incarceration. *Fletcher* correctly concluded, as a matter of law, that section 3–3–5(f) of the Unified Code of Corrections does not violate the *ex post facto* clauses of the federal and Illinois Constitutions. *Fletcher* remains consistent with federal law. Accordingly, the circuit court's dismissal of Hill's *ex post facto* claims was not erroneous.

### III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.


Affirmed.