NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200202-U

NO. 4-20-0202

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 17, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GREGORY D. JONES, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ROB JEFFREYS, TERI KENNEDY, | ) | No. 19MR22 |
| KENDRA WOLF, JACOB DALTON, NANCY | ) | |
| JOHNSON, STEPHEN MALCOME, and SHARON | ) | Honorable |
| SIMPSON, | ) | Jennifer H. Bauknecht, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

ORDER

¶ 1   *Held*:   The trial court properly dismissed plaintiff's petition for common-law writ of *certiorari* for failure to state a claim pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)).

¶ 2   In March 2019, plaintiff, Gregory D. Jones, an inmate in the custody of the Illinois Department of Corrections (DOC), while incarcerated at the Pontiac Correctional Center, filed a petition for a common law writ of *certiorari* alleging defendants, various DOC officials, employees, and agents, deprived him of his due process rights during prison disciplinary proceedings and retaliated against him for exercising his first amendment rights. The trial court dismissed plaintiff's petition in April 2020 pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). Plaintiff appeals, *pro se*, arguing the court erred in granting defendants' motions to dismiss his petition because he sufficiently stated a claim for relief

based on defendants' alleged violations of his due process rights and because he stated a cause of action for retaliation. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On March 15, 2019, plaintiff filed a complaint for a common law writ of *certiorari* in the trial court seeking judicial review of DOC disciplinary proceedings which were conducted in September 2018. In his complaint, plaintiff named the following DOC officials, employees, and agents as defendants: John Baldwin (Director of DOC), Jacob Dalton (adjustment committee member), Nancy Johnson (licensed practical nurse employed by a private firm contracted to provide services to DOC inmates), Terri Kennedy (warden of Pontiac Correctional Center), Stephen Malcome (correctional officer), Sharon Simpson (grievance officer), and Kendra Wolf (adjustment committee member). (We note Johnson filed a brief separate from the other defendants. However, considering the similarities between the defendants' arguments, with only one exception, we will not attempt to attribute an argument to an individual defendant. Also, according to the government defendants' brief, Rob Jeffreys has succeeded John Baldwin as Director of DOC and should be substituted as a party in the appeal caption pursuant to section 2-1008(d) of the Code of Civil Procedure (735 ILCS 5/2-1008(d) (West 2018)).

¶ 5        In plaintiff's petition, he alleged multiple violations of his due process rights relating to the disciplinary proceedings. Plaintiff claimed his due process rights had been violated in that: (1) Baldwin, Dalton, Johnson, Kennedy, Malcome, and Wolf knowingly submitted or approved false information against him; (2) Baldwin, Dalton, and Wolf failed to comply with DOC regulations; and (3) Simpson failed to respond to grievances plaintiff submitted related to the disciplinary proceedings. Plaintiff also alleged he was being retaliated against for speaking with

the Illinois State Police investigators about an alleged murder of an inmate at the Pontiac Correctional Center by two correctional officers at the facility. Specifically, plaintiff alleged Johnson and Malcome filed a "spurious disciplinary report" the day before he was to be transferred to a different, "safer" correctional facility. Plaintiff further alleged other staff at the Pontiac Correctional Center had sexually assaulted him, injured him, threatened him, denied him medical care, kept his "legal filings" and mail from him, and "celled" him with "a known enemy for harm by proxy." Although plaintiff references several exhibits in the body of his petition, none are contained in the record.

¶ 6 Defendants filed motions to dismiss plaintiff's petition pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), alleging plaintiff failed to state facts sufficient to plead a cause of action. Attached to one of the motions filed by defendants was an unsigned, two-page DOC adjustment committee final summary report, which is the only document in the record from the September 2018 prison disciplinary proceedings. The following information is gleaned from the final summary report.

¶ 7 On September 11, 2018, Johnson and Officer Lorrie Puttkammer filed "tickets" against plaintiff. In her ticket, Johnson claimed she was passing out medication in the gallery in which plaintiff was housed when he "became insolent and argumentative about his meds being crushed." Plaintiff began shouting at Johnson and threw the cup containing his medication at her. The cup struck Johnson's forearm. Later that day, Officer Puttkammer filed a ticket in which she claimed she discovered five "white colored pills" while performing a shakedown of plaintiff's cell. Based on these tickets, plaintiff was charged with assault, insolence, and possession of contraband. On September 18, 2018, the adjustment committee, which consisted of Dalton and Wolf,

conducted a hearing to consider the charges. During the hearing, plaintiff denied that he threw anything at Johnson or argued with her. He further claimed the pills Puttkammer found were his glucosamine medication, which he had saved to take the following morning when he was to be transferred to a different facility. One witness was called at plaintiff's request. That witness informed the adjustment committee he "d[id not] recall" the incident. The adjustment committee determined plaintiff committed the charged offenses and recommended the imposition of one month of "C Grade," one month of segregation, one month of audio/visual restriction, and six months of contact visit restriction. Kennedy approved the adjustment committee's decision and recommendations. Plaintiff was served with the final summary report on October 9, 2018.

¶ 8        Plaintiff later filed responses to defendants' motions to dismiss.

¶ 9        On April 8, 2020, the trial court entered an order granting defendants' motions to dismiss. In its order, the court found, following the adjustment committee hearing, plaintiff "did not lose any good time" and the "discipline imposed only affected plaintiff's confinement and not the duration of his sentence." Therefore, the court concluded, "due process [was] not implicated." The court additionally found plaintiff's claims of retaliation were "conclusory and not supported by any factual allegations."

¶ 10        This appeal followed.

¶ 11                          II. ANALYSIS

¶ 12        On appeal, plaintiff argues the trial court erred in granting defendants' section 2-615 motions to dismiss his petition for a writ of *certiorari* because his claims for relief based on alleged violations of his due process rights and retaliation were legally sufficient. We review plaintiff's claims *de novo*. See *Roberts v. Board of Trustees of Community College District No.*

*508*, 2019 IL 123594, ¶ 21, 135 N.E.3d 891.

¶ 13        As an initial matter, we address Johnson's argument that plaintiff's brief does not comply with Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) and should be stricken. Rule 341(h)(6) requires an appellant to include in his brief a statement of facts section containing "the facts necessary to an understanding of the case *** with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). Johnson correctly notes that plaintiff's brief does not conform to the rule. Adherence to Rule 341 is "not an inconsequential matter. *** Where an appellant's brief fails to comply with the rule[ ], this court has inherent authority to dismiss the appeal for noncompliance with its rule[ ]." *LaGrange Memorial Hospital v. St. Paul Insurance Company*, 317 Ill. App. 3d 863, 876, 740 N.E.2d 21, 32 (2000). Plaintiff's *pro se* status does not excuse his noncompliance with Rule 341. See *Evans v. Godinez*, 2014 IL App (4th) 130686, ¶ 40, 21 N.E.3d 1280. However, dismissal of an appeal for noncompliance is not required "so long as we understand the issue plaintiff intends to raise and especially where the court has the benefit of a cogent brief of the other party." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511, 748 N.E.2d 222, 226 (2001). Here, we sufficiently understand plaintiff's contentions and thus decline to dismiss his appeal.

¶ 14        "A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face." *Beacham v. Walker*, 231 Ill. 2d 51, 57, 896 N.E.2d 327, 331 (2008). "A complaint is insufficient if it states mere conclusions of fact or law, and it must, at a minimum, allege facts sufficient to set forth the essential elements of a cause of action." *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 27, 972 N.E.2d 1238. When reviewing a claim that the trial court erred in dismissing a pleading pursuant to section 2-615 of the Code of Civil

Procedure, this court must determine "whether the allegations of the [pleading], when taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Cowper v. Nyberg*, 2015 IL 117811, ¶ 12, 28 N.E.3d 768.

¶ 15                              A. Plaintiff's Due Process Claim

¶ 16        "Procedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake, to which a person has a legitimate claim of entitlement." *Hill v. Walker*, 241 Ill. 2d 479, 485, 948 N.E.2d 601, 604 (2011). This court recently set forth the following two-step analytical framework for reviewing allegations of procedural due process violations in the context of prison disciplinary proceedings:

> "[T]he first step in our analysis involves determining whether a liberty or property interest has been interfered with by the State, for if there is not, no process is due. [Citation.] In the event a liberty or property interest has been interfered with by the State, the second step involves an examination of whether the procedures attendant upon that interference were constitutionally sufficient. [Citation.]" *Trevino v. Baldwin*, 2020 IL App (4th) 180682, ¶ 20.

Accordingly, in order to claim a violation of his due process rights, plaintiff was required to allege that his liberty or property interests were interfered with by the State. Plaintiff does not claim defendants interfered with his property interests. Therefore, we must determine whether he alleged the State interfered with his liberty interests. We find that he did not.

¶ 17        In *Fillmore v. Taylor*, 2019 IL 122626, ¶ 48, 137 N.E.3d 779, our supreme court determined that "in the context of prison disciplinary proceedings, a prisoner is entitled to due process protections *** only when the penalty faced by the prisoner implicates a liberty interest

- 6 -

because it affects the nature or duration of his confinement." The court noted mere violations by DOC of its own regulations governing prison disciplinary proceedings do not affect a liberty interest; rather, the cause of action arising from a due process violation results from "the interest affected by the discipline imposed." *Id.* ¶ 47. The court reviewed section 504.80(k)(4) of Title 20 of the Administrative Code (20 Ill. Adm. Code 504.80(k)(4), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003)), the regulation setting forth the disciplinary sanctions DOC may impose in disciplinary proceedings, and found, with limited exceptions, none of the authorized sanctions implicated a liberty interest. *Id.* ¶¶ 46-47. One authorized sanction the court determined did implicate a liberty interest was the revocation of statutory good time or good conduct credits. *Id.* ¶ 56. Specifically, the court determined, "[a]s a general rule, only sanctions which result in loss of good conduct time credits for inmates who are eligible for release on mandatory supervision or which otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest." (Internal quotation marks omitted.) *Id.*

¶ 18 Turning to the present case, the disciplinary sanctions listed in the final summary report included one month of "C Grade," one month of segregation, one month of audio/visual restriction, and six months of contact visit restrictions. None of the above sanctions were alleged by plaintiff to have impacted his entitlement to good conduct credit.

¶ 19 Nonetheless, plaintiff contends his liberty interest was interfered with because defendants' actions prevented his transfer to Hill Correctional Center, which he claims was scheduled to occur on September 12, 2018, the day after Johnson filed the ticket. However, as defendants point out, the constitution does not "guarantee that [a] convicted prisoner will be placed in any particular prison[.] *** The conviction has sufficiently extinguished the defendant's liberty

interest to empower the State to confine him in *any* of its prisons." (Emphasis in original.) *Meachum v. Fano*, 427 U.S. 215, 224, (1976). Therefore, plaintiff cannot claim the alleged cancellation of his transfer from Pontiac Correctional Center interfered with a protected liberty interest.

¶ 20        Plaintiff also vaguely claims an injury to his liberty interests in that "the spurious ticket and subsequent adverse acts *** paint[ed] an inaccurate picture of [him] in [his] appeal to the [g]overnor through the Illinois Prison Project." Plaintiff never made this claim in the trial court and has therefore forfeited consideration of it on appeal. See *SI Securities v. Bank of Edwardsville*, 362 Ill. App. 3d 925, 933, 841 N.E.2d 995, 1002 (2005) ("Issues not raised in a complaint and points not argued in the trial court are waived on appeal."). Forfeiture aside, we find plaintiff's argument meritless because he did not have a liberty interest in a potential executive pardon. See *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 67-68 (2009) ("[N]oncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is entitled as a matter of state law." (Emphasis omitted.)).

¶ 21                            B. Plaintiff's Retaliation Claim

¶ 22        "To state a claim for retaliation under the first amendment, a plaintiff must allege that a prison official[ ] retaliated against him for exercising a constitutionally protected right." (Internal quotation marks omitted.) *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 65. Specifically, a plaintiff must allege facts indicating: "(1) he engaged in activity protected by the first amendment, (2) he experienced an adverse action that would likely deter first amendment activity in the future, and (3) the first amendment activity was at least a motivating factor in defendants' decisions to take the retaliatory actions." (Internal quotation marks omitted.) *Id.*

¶ 23       As noted above, plaintiff alleged he was retaliated against for speaking with Illinois State Police investigators about an alleged murder of an inmate at the Pontiac Correctional Center by two correctional officers at the facility. In response, defendants argue plaintiff's claim of retaliation was legally insufficient because he failed to further allege that his speaking with the Illinois State Police investigators was a motivating factor in defendants' decisions to retaliate against him. We agree with defendants.

¶ 24       To sufficiently allege his first amendment activity was a motivating factor in defendants' decision to take retaliatory actions, plaintiff had to plead facts demonstrating "the adverse action against [him] would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Put another way, plaintiff was required to show a nexus between defendants' conduct and an intent to chill his right to speak with state police about the murder investigation. See *Dempsey v. Johnson*, 2016 IL App (1st) 153377, ¶ 26, 69 N.E.3d 236. Here, upon examining the petition, we find no such allegations exist. Plaintiff made no attempt in his petition to establish a link or connection between his conversations with investigators and the disciplinary proceedings instituted by defendants against him in 2018. Thus, we find his retaliation claim was legally defective.

¶ 25                             III. CONCLUSION

¶ 26       For the reasons stated, we affirm the trial court's judgment.

¶ 27       Affirmed.